UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In Re:

CTE 1 LLC (d/b/a Lexus of Englewood),

Debtor.

CHARLES M. FORMAN, in his capacity as PLAN
ADMINISTRATOR FOR CTE 1 LLC,

v.

CARMINE A. DEMAIO III, MARK
DEMAIO, FRANK C. HOLTHAM JR.,
CARMINE ZECCARDI JR., DMITRY
ZELDIN, PATTI ZIENOWICZ, CTE 2 LLC
DBA VOLKSWAGEN OF UNION, CTE 2
LAND LLC, DEMAIO HOLDINGS, INC.
DBA NORMAN GALE BUICK GMC,
INFINITI OF ENGLEWOOD, LEONARD
AUTOMOTIVE ENTERPRISES, INC. DBA
TOYOTA OF HACKENSACK,
CONCOURS MOTORS, INC., ZECCARDI
LLC, JOHN DOE 1-10 and JANE DOE 1-10,

Defendants.

**FILED**

Jeanne A. Naughton, CLERK

**August 11, 2023**
United States Bankruptcy Court
Newark, NJ

By: /S/ Juan Filgueiras, Courtroom Deputy

Case No.:       19-30256 (VFP)

Chapter:        11

Judge:          Vincent F. Papalia

Adv. Pro. No.   21-1455 (VFP)

Hearing Date:   February 16, 2023

## OPINION ON MOTIONS TO DISMISS FILED BY
### FRANK C. HOLTHAM, JR., CARMINE ZECCARDI, JR., DMITRY ZELDIN, LEONARD AUTOMOTIVE ENTERPRISES, INC., D/B/A TOYOTA OF HACKENSACK, CONCOURS MOTORS, INC. AND ZECCARDI LLC

**APPEARANCES**

Robert Malone, Esq.
Brett Theisen, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102
*Attorneys for Plan Administrator*
*Charles. M. Forman, Esq.*

Jonathan I. Rabinowitz, Esq.
Henry M. Karwowski, Esq.
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, N.J. 07039
*Attorneys for Defendants Carmine Zeccardi, Jr.,*
*Concours Motors, Inc., and Zeccardi LLC*

Carl J. Soranno, Esq.
Bob Kasolas, Esq.
Brach Eichler, L.L.C.
101 Eisenhower Parkway
Roseland, NJ 07068-1067
*Attorneys for Defendants Frank C. Holtham, Jr.*
*and Leonard Automotive Enterprises, Inc.*

Michael F. Bevacqua, Jr., Esq.
Vincent J. Roldan, Esq.
Mandelbaum Salsburg P.C.
3 Becker Farm Road, Suite 105
Roseland, NJ 07068
*Attorneys for Dmitry Zeldin*

**HONORABLE VINCENT F. PAPALIA, Bankruptcy Judge**

## I.    INTRODUCTION

These matters come before the Court on three (3) separate motions (the "Motions") filed

by defendants:

(i)     Frank C. Holtham, Jr. ("Holtham"), Leonard Automotive Enterprises, Inc. (d/b/a
Toyota of Hackensack) ("Leonard Automotive");

(ii)     Carmine Zeccardi, Jr. ("Zeccardi"), Zeccardi LLC and Concours Motors, Inc.
("Concours"); and

(iii)     Dimitry Zeldin ("Zeldin")

(collectively, the "Moving Defendants") to dismiss the eleven-count adversary Complaint filed

against them by Charles M. Forman, Esq., in his capacity as Plan Administrator ("Forman" or the

"Plan Administrator") under the Official Committee of Unsecured Creditors' Third Amended

Combined Disclosure Statement and Plan of Liquidation (the "Plan") confirmed by Order entered

on November 24, 2020 (the "Confirmation Order") in this voluntary Chapter 11 case.  The Plan

Administrator filed a unitary objection to the Motions, and each Defendant filed a reply.  For the

reasons set forth below, the Court grants the Motions in part and denies them in part.

## II.    JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing

Orders of Reference entered by the United States District Court on July 10, 1984 and amended on

September 18, 2012.  In addition, a Bankruptcy Court has "jurisdiction to interpret and enforce its

own prior orders." *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) (in the instant case,

the Confirmation Order entered on November 24, 2020).  Based on the claims alleged in the

adversary complaint, this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) [claims

allowance], (F) [preferences], (H) [fraudulent conveyances] and (O).  Venue is proper in this Court

under 28 U.S.C. § 1408.  The court issues the following findings of fact and conclusions of law

1

pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute

conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law

constitute findings of fact, they are adopted as such.

## III.    STATEMENT OF RELEVANT FACTS

The relevant factual background is taken from the Plan Administrator's Complaint and, to

a lesser extent, the record of this bankruptcy case and the submissions of the parties on these

Motions, as referenced in this Opinion.

A. <u>Background to the Debtor, the Operating Agreement and Pre-petition Activity</u>

(i)    <u>The Debtor and Its Members</u>

The Debtor in this case is CTE 1 LLC (the "Debtor"), an automobile dealership that was

formed on November 3, 2016 under the New Jersey Revised Uniform Limited Liability Company

Act, N.J.S.A. § 42:2C-1 through 94 (the "RULLCA," or the "Act").[1]   The Debtor's January 30,

2017 Operating Agreement (the "OA") identified Debtor's members, their respective capital

contributions, voting rights (perhaps incompletely) and duties.  The three (3) Moving Defendants

constitute three (3) of the Debtor's four (4) members under the OA.  According to the OA, the four

(4) members maintained the following ownership interests and made the corresponding capital

contributions through the petition date:

| | | |
|---|---|---|
| Carmine A. DeMaio, III ("DeMaio") | 41.25% | $7,734,000 |
| Frank C. Holtham, Jr. ("Holtham") | 36.25% | $7,333,000 |
| Dimitry Zeldin ("Zeldin") | 3.75% | $1,000,000 |
| Carmine Zeccardi ("Zeccardi") | 18.75% | $3,833,000 |

(collectively, the "Members").  Holtham, Zeccardi and Zeldin are sometimes referred to as the

Individual Defendants.[2]  Holtham and DeMaio (a defendant in this adversary proceeding but not

---

[1] Declaration of Carl J. Soranno, Esq., Debtor's Jan. 30, 2017 Operating Agreement § 1.1 (the "OA"), Ex. B, Dkt. No. 14-2 ("Soranno Decl.").

[2] Soranno Decl., OA, at 34, Ex. B, Membership Information, Ex. A, Dkt. No. 14-2; List of Equity Security Holders, Main Dkt. No. 1.  An unsigned and otherwise incomplete copy of a form Voting Trust Agreement is attached to and

a movant in these Motions) were previously members of another dealership, AUA Englewood, that (with entities related to Holtham and/or DeMaio) borrowed from Toyota Motor Credit Corporation ("TMCC") and then assigned the related indebtedness to Debtor when Debtor was formed.[3]  Debtor and TMCC entered their own  Inventory Agreement (for floor plan financing) on August 17, 2017.[4]

(ii)    The Operating Agreement

The manner in which the OA and N.J.S.A. §§ 42:2C-37 ("Management of limited liability company") and 42:2C-39 ("Standards of conduct for members and managers") controlled the Defendants' authority, voting rights and obligations as Debtor's Members is the foundation of these contested Motions.  The OA provided the following definitions and structure:

2.25    "Operating Manager" shall mean those charged with the management of the Company as set forth in Article V, or any other Person or Persons that succeed him in that capacity.[5]

Article V of the OA was dedicated to the duties of the Operating Manager and stated in most relevant part:

5.1    Management and Authority

(a) The property, business and affairs of the [Debtor] shall be managed by its Operating Manager.  Except where the Members' approval is expressly required by this Agreement or by the Act, the Operating Manager shall have full authority, power and discretion to make all decisions with respect to the [Debtor's] business and to perform such other services and activities as set forth in this Agreement.  The Operating Manager shall be an agent of the [Debtor] for its business purposes and the Operating Manager may bind the Company in the ordinary course.

(b) Except as otherwise expressly provided in this Agreement or the Act the Members shall have no right to control or manage, nor shall they take any part

---

a part of the thirty-six-page OA provided with the Soranno Declaration.  Soranno Decl., OA, Ex. B, Form of voting Trust agreement/Voting Trust Agreement (unsigned), Ex. B, Dkt. No. 14-2.
[3] Soranno Decl., Apr. 6, 2020 Am. Verified Compl. filed by TMCC ("TMCC Compl.") ¶¶ 1-29, Ex. C, Dkt. No. 14-2; Compl. ¶¶ 68-69, 138, Dkt. No. 1.  To the extent that this background summary deviates from the Apr. 6, 2020 TMCC Complaint, that document controls.
[4] Compl. ¶¶ 68-69, Dkt. No. 1.
[5] Soranno Decl., OA § 2.25, Ex. B, Dkt. No. 14-2.

in the control or management of, the property, business or affairs of the [Debtor], but they may exercise the rights and powers of Members under this Agreement, including, without limitation, the right to approve certain matters to the extent provided herein.

5.2    Number, Tenure and Qualifications.  The [Debtor] shall have one Operating Manager, who shall initially be Carmine DeMaio. . . .

5.3    Certain Powers of the Operating Manager.  Without limiting the generality of Section 5.1, but subject to Sections 5.4, 5.5, 5.6 and 5.15, the Operating Manager shall have the power and authority, on behalf of the [Debtor] to: . . .[6]

Section 5.3 goes on to list thirteen (13) categories of rights and duties, lettered (a) through (m), assigned to the Operating Manager.[7]  These included borrowing money and entering contracts on Debtor's behalf.[8]  The exceptions to the Operating Manager's broad authority are set forth in §§ 5.4 and 5.5.  Those sections required the unanimous or majority vote of other Members as to certain significant matters, such as: assignments of assets or interests, voluntary bankruptcy, acquisition or disposition of real property, amendment of the Certificate of Formation or OA, creating a monetary obligation in excess of $500,000 and the like.[9]  The OA expressly charged the Operating Manager with duties of care, good faith (§§ 5.6, 5.8) and loyalty (§ 5.7).[10]  The OA did not expressly charge the other Members with affirmative duties such as good faith, care and loyalty, nor did it expressly provide for any limitation on such duties by the other Members.[11]

Consistent with the above, the managerial duties of the other Members as set forth in Article VI of the OA were limited, and they were granted no authority over the Debtor's operations. To the extent that the Members had a right to approve those limited but important matters identified above, they voted according to their percentage of ownership (including fractions) (e.g., 18.75%

---

[6] Soranno Decl., OA, Art. V, Ex. B, Dkt. No. 14-2.
[7] Soranno Decl., OA § 5.3, Ex. B, Dkt. No. 14-2.
[8] Soranno Decl., OA § 5.3, Ex. B, Dkt. No. 14-2.
[9] Soranno Decl., OA §§ 5.4, 5.5, Ex. B, Dkt. No. 14-2.
[10] Soranno Decl., OA §§ 5.6, 5.7, 5.8, Ex. B, Dkt. No. 14-2.
[11] Soranno Decl., OA, Art. VI, Ex. B, Dkt. No. 14-2.

ownership interest = 18.75 votes).[12]  Significantly, however, the OA at § 6.14 ("Voting Trust")

stated in full:

> Notwithstanding anything in this Agreement to the contrary, each member
> acknowledges, consents to, and agrees that its right, if any, to vote on any matter
> than may otherwise be subject to the member's vote under this Agreement is subject
> and subordinate to the terms of that certain Voting Trust Agreement dated the same
> date as this Agreement, a copy of which is annexed hereto as Exhibit B.[13]

The gist of the Form of Voting Trust Agreement is that each assigning Member would

assign his voting rights to DeMaio in anticipation of entering a franchise with Lexus, which

"requires that one member have majority authority to make all decisions on behalf of [Debtor]."[14]

However, as noted, no signed or completed version of any Voting Trust Agreement is part of the

record on these Motions.[15]  To add to the confusion and inconsistencies in these regards, the OA

(at Exhibit A) indicates that Holtham is a "Voting Member" and that Zeccardi and Zeldin are

"Nonvoting Members."[16]  Also unclear on the record before the Court is whether and when the

Voting Trust Agreement was actually in effect and what its final terms may have been.

B. <u>Other Allegations About Debtor's Prepetition Practices</u>

Other aspects of Debtor's formation and financing structure, as alleged by the Plan

Administrator, are germane to the Plan Administrator's claims.  Through November 21, 2017,

DeMaio, Holtham and Holtham's Leonard Automotive entered into guarantees of the Debtor's

Inventory Agreement and other agreements and credit extensions with TMCC.[17]  Through May

18, 2018, DeMaio, Holtham, Leonard Automotive and Zeccardi entered into guarantees and/or

---

[12] Soranno Decl., OA § 6.2 ("Rights of Approval"), Ex. B, Dkt. No. 14-2.

[13] Soranno Decl., OA § 6.14, Ex. B, Dkt. No. 14-2.

[14] Soranno Decl., OA, at 35, Ex. B, Dkt. No. 14-2.

[15] Zeccardi's Brief attached to his July 10, 2020 Objection to confirmation refers to an "executed" Voting Trust Agreement, but that copy is also unsigned.  Zeccardi Br., at 20, Dkt. No. 22-1; Zeccardi July 10, 2020 Obj., OA and Voting Trust Agreement, Ex. A, Main Dkt. No. 471.

[16] Soranno Decl., OA, Ex. B, Membership Information, Ex. A, Dkt. No. 14-2.  An additional legend in the List of Equity Security Holders in the petition but not in the Member Information in the OA states that Holtham's voting membership was "subject to Voting Trust."  Petition, at 8, Dkt. No. 1.

[17] Compl. ¶¶ 71-77, Dkt. No. 1.

further credit extensions with TMCC.[18]  The Complaint alleges that DeMaio signed a March 28, 2018 Certificate of Operating Manager to TMCC to confirm that he was familiar with the terms of the TMCC credit agreement and that Holtham provided personal financial information to TMCC at the latter's request.[19]

The Plan Administrator further alleges (apparently as reported by DeMaio) that Holtham hired a private accountant in late 2018 or early 2019 to review Debtor's finances.[20]  Additionally, the Plan Administrator alleges that Zeccardi and his father, Carmine Zeccardi, Sr., were at the Debtor-dealership on a daily basis and conducted daily meetings with DeMaio.[21]  The Complaint avers that Zeccardi and Concours arranged for the purchase and sale of vehicles between Debtor and Concours with little to no oversight by DeMaio or the other members.[22]  The Complaint also alleges that DeMaio caused the Debtor to borrow $6 million from First Bank for the covenanted purpose of buying out Holtham's interest in the Debtor; that Holtham and Zeccardi were involved in negotiating this loan; but that the Debtor and DeMaio used the loan proceeds for unauthorized purposes (including operation of the Debtor and payment of the debts of DeMaio and certain of his entities).[23]  The Plan Administrator surmises that Holtham and Zeccardi knew of this misuse of the First Bank loan proceeds.[24]  The Complaint generally alleges that Holtham, Zeccardi, Zeldin and DeMaio misrepresented (or caused to be misrepresented or failed to disclose) Debtor's true financial condition to TMCC, First Bank "and others," although a fair reading of the Complaint limits the source of those misrepresentations to DeMaio and describes TMCC and First Bank as the parties to whom those misrepresentations were made.[25]

---

[18] Compl. ¶¶ 83-90, Dkt. No. 1.
[19] Compl. ¶¶ 82-83, 87, Dkt. No. 1.
[20] Compl. ¶ 122, Dkt. No. 1.
[21] Compl. ¶ 123, Dkt. No. 1.
[22] Compl. ¶ 127, Dkt. No 1
[23] Compl. ¶¶ 144-52, Dkt. No. 1.
[24] Compl. ¶ 148, Dkt. No. 1.
[25] Compl. ¶¶ 192-94, Dkt. No. 1.

The Plan Administrator alleges that Zeccardi himself "secretly" removed up to $2 million in vehicles from Debtor's premises in October 2019 both before and after an October 11, 2019 audit showed them to be missing.[26]  The Complaint describes other Debtor-practices of double-reporting assets (double-counting the value of a used car; floor-planning vehicles with both Debtor and another DeMaio entity; and/or reporting the vehicles as assets of both the Debtor and of the other DeMaio entity).[27]  The Plan Administrator alleges generally that DeMaio "operated the [Debtor] 'without guardrails'" and that Holtham, Zeccardi and Zeldin allowed him to do so.[28]

C.  The District Court Action and the Bankruptcy Case

On October 18, 2019, TMCC sued Debtor, DeMaio, Holtham, Zeccardi and Leonard Automotive (the Holtham-controlled entity) in U.S. District Court for the District of New Jersey under Dkt. No. 2:19-cv-19092-CCC-ESK on the grounds that Debtor sold vehicles out of trust and committed other defaults under the TMCC Inventory Agreement (the "District Court Action").[29]  TMCC quickly obtained a Temporary Restraining Order that circumscribed Debtor's ability to dispose of TMCC collateral.[30]  On October 25, 2019, TMCC also moved for the appointment of a receiver for the Debtor.[31]  DeMaio, Holtham and Zeccardi eventually filed Answers and affirmative claims for relief (third-party complaint, counterclaims, crossclaims).[32]  In that action,

---

[26] Compl. ¶ 154-56, Dkt. No. 1.

[27] Compl. ¶¶ 159-62, Dkt. No. 1.

[28] Compl. ¶ 157, Dkt. No. 1.

[29] Compl. ¶¶ 11,  91-95, 98-109, Dkt. No. 1 (identifying and describing District Court Action).  *See also* Soranno Decl., Apr. 6, 2020 Am. Verified TMCC Compl., Ex. C, Dkt. No. 14-2.

[30] Compl. ¶ 11, Dkt. No. 1.

[31] Compl. ¶ 110, Dkt. No. 1.

[32] *See* TMCC District Court Action, Dkt. Nos. 35, 36, 84, 85, 195, D.N.J. Case No. 2:19-cv-19092-CCC-ESK.  This is relevant to the Plan Administrator's statement in defense of the precision of his pleading under Fed. R. Civ. P. 8 and 9:

> Far from being a pretext for discovery, the factual allegations set forth in the Plan Administrator's Complaint are predicated upon and derived largely from the Members' own pleadings filed in the TMCC Action, as well as from the Debtor's own books and records, and the Plan Administrator's further initial investigatory activities, including witness interviews.

Plan Admin. Obj., at 10, Dkt. No. 34.  The Plan Administrator identifies seventeen (17) paragraphs of his Complaint that cite to the Defendants' District Court pleadings.  Plan Admin. Obj., at 28, Dkt. No. 34, citing to Compl. ¶¶ 121, 123, 125, 128, 130-32, 137, 154-56, 157, 162-63, 178, 190-91, Dkt. No. 1.

DeMaio asserted (among other things) that the Debtor was "hopelessly" in debt since Debtor's inception.[33]

The Debtor filed its voluntary Chapter 11 petition shortly afterward on October 27, 2019. On October 30, 2019 (among other first-day motions), Debtor applied to retain Carl Marks Advisory Group LLC and Steven F. Agran as Chief Restructuring Officer ("CRO") *nunc pro tunc* to the petition date.[34]  The Bankruptcy Court entered the Carl Marks/Agran Retention Order on November 1, 2019 (*nunc pro tunc* to the petition date).[35]  The Plan Administrator later averred that DeMaio "ceded all management control at the end of business on October 29, 2019 to Agran, at the time of his appointment as CRO."[36]  Under a January 9, 2020 Consent Order signed by DeMaio, Holtham and Zeccardi only (not by Zeldin), those Members agreed to appoint Forman as "Independent Manager to exercise the authority of the Operating Manager as defined in Section 5.2" of the OA.[37]  Under that Consent Order, Forman, in turn, delegated his daily operations duties under the OA to Agran as CRO.[38]  By Order entered on February 6, 2020, the Court approved the sale of virtually all Debtor's assets to DARCARS of Englewood, Inc., and that sale closed on February 28, 2020.[39]

TMCC filed an Amended Complaint in District Court on or about April 6, 2020 and added another Holtham-controlled entity (Landfrank LLC) as a defendant.[40]  On November 11, 2020 in this District Court Action, TMCC, Holtham, Leonard Automotive and Landfrank LLC, entered into a Confidential Settlement Agreement and Mutual Release and Stipulation of Dismissal of that

---

[33] Apr. 19, 2021 DeMaio Answer and  Countercl. ¶¶ 18-20, Dkt. No. 164, D.N.J. Case No. 2:19-cv-19092-CCC-ESK.
[34] Carl Marks Mot., Main Dkt. No. 13.
[35] Nov. 1, 2019 Order, Main Dkt. No. 28.
[36] Nov. 24, 2020 Conf. Order, Plan, at 19, Ex. A, Main Dkt. No. 570.
[37] Jan. 9, 2020 Consent Order ¶ 1, Main Dkt. No. 191.
[38] Jan. 9, 2020 Consent Order ¶ 3, Main Dkt. No. 191.
[39] Feb. 6, 2020 Sale Order, Main Dkt. No. 247; Mar. 2, 2020 Notice of Sale Closing, Main Dkt. No. 296.
[40] Soranno Decl., Apr. 6, 2020 Am. Verified Compl., Ex. C, Dkt. No. 14-2.

action as to Holtham and his entities (the "Holtham/TMCC Settlement").[41]  The Debtor and other

Defendants were not party to that Settlement.

The Official Committee of Unsecured Creditors (the "Committee" or "UCC") proposed a

Combined Disclosure Statement and Plan of Liquidation that was amended three (3) times.[42]  The

Bankruptcy Court approved the last, the Third Modified Combined Disclosure Statement and Plan,

by Order entered on November 24, 2020 (the "Plan").[43]  The Plan contained two (2) broad

provisions particularly germane to these Motions:

    (i) the approval of Debtor's Global Settlement with TMCC (the "Debtor/TMCC Global Settlement"), pursuant to which TMCC waived its rights:

> as to any claims that are property of the Debtor to which TMCC has or could claim any right, including but not limited to, chapter 5 causes of action. This waiver shall not apply to any Guarantor of the Debtor's obligations to TMCC, which rights TMCC hereby specifically reserves under each of the Plan, the Plan Documents, the Plan Supplement, the Global Settlement Agreement, and all ancillary documents or other agreements related to the foregoing;[44]

    (ii) the Debtor's extensive and detailed retention and preservation of claims against the Moving Defendants and others, as referenced throughout the November 24, 2020 Confirmation Order, the Plan and Exhibit A ("Causes of Action") attached to the Plan.[45] These included a non-exclusive summary or listing of potential bankruptcy avoidance actions, state and common law claims for fraudulent transfer, breach of fiduciary duty and claims for "conversion, unjust enrichment, or under other equitable principles" arising from Debtor's pre- and postpetition actions, including transfer of property.[46]

---

[41] Soranno Decl., Nov. 11, 2020 Stip. of Dismissal, Ex. D, Dkt. No. 14-2; Soranno Reply Decl., Nov. 11, 2020 Confidential Settlement Agreement, Ex. L, Dkt. No. 39-1.  The copy attached to this Reply is heavily redacted; two subparagraphs of the releases are visible.
[42] May 1, 2020, Main Dkt. No. 364; May 22, 2020, Main Dkt. No. 403; Nov. 3, 2020, Main Dkt. No. 527; Nov. 16, 2020, Main Dkt. No. 553.
[43] Nov. 24, 2020 Conf. Order, Main Dkt. No. 570 (Third Amended Combined DS and Plan attached).
[44] Nov. 24, 2020 Conf. Order, Plan Art. III.N, at 33-34, Ex. A, Main Dkt. No. 570.
[45] Nov. 24, 2020 Conf. Order, Plan, Ex. A, Causes of Action, Ex. A, Main Dkt. No. 570.
[46] Nov. 24, 2020 Conf. Order, Plan, Ex. A, Causes of Action, Ex. A, Main Dkt. No. 570.

The Confirmation Order and Plan also appointed Charles M. Forman, Esq., as Plan Administrator with broad authority under Plan Articles VIII through X to wind down and to liquidate the Debtor's estate.[47]

D. The Adversary Complaint

Charles M. Forman, Esq., as Plan Administrator filed this eleven-count Adversary Complaint on October 27, 2021 against the Moving Defendants, DeMaio, entities owned or controlled by them and other individuals (thirteen (13) defendants in total).  At least one Moving Defendant is named in every Count of the Complaint except Count 10 (postpetition transfers under 11 U.S.C. § 549).  Not every Movant is named in every Count, but there is considerable overlap, as evidenced by the following list that includes only the three (3) Moving Defendants (and their Defendant-affiliates) (Leonard Automotive appears as Toyota of Hackensack in the caption to each Count):

**Moving Defendants by Count**

| | | |
|---|---|---|
| 1 | Negligent Misrepresentation | Holtham, Zeccardi, Zeldin |
| 2 | Breach of Fiduciary Duty | Holtham, Zeccardi, Zeldin |
| 3 | Common Law Fraud | Holtham, Zeccardi |
| 4 | Claim Disallowance | Holtham, Leonard Automotive, Zeccardi, Concours, Zeldin |
| 5 | Actual fraud 2-yr 11 U.S.C. § 548(a)(1)(A) | Holtham, Leonard Automotive, Zeccardi LLC, Concours, Zeldin |
| 6 | Actual fraud 4-yr 11 U.S.C. § 544(b) N.J.S.A. § 25:2-25(a)(1) | Holtham, Leonard Automotive, Zeccardi, Concours, Zeccardi LLC, Zeldin |
| 7 | Constructive fraud 2-yr 11 U.S.C. § 548(a)(1)(B) | Holtham, Leonard Automotive, Concours, Zeccardi LLC, Zeldin |

---

[47] Nov. 24, 2020 Conf. Order ¶ 10, Main Dkt. No. 570.

| 8 | Constructive fraud 4-yr<br>11 U.S.C. § 544(b)<br>N.J.S.A. §§ 25:2-25(a)(2)<br>and/or 25:2-27 | Holtham, Leonard Automotive,<br>Zeccardi, Concours, Zeccardi LLC,<br>Zeldin |
| 9 | Insider preference 1-yr<br>11 U.S.C. § 547 | Holtham, Leonard Automotive,<br>Concours, Zeccardi LLC,<br>Zeldin |
| 10 | Postpetition transfers § 549 | No Moving Defendant included |
| 11 | Unjust enrichment | Holtham, Leonard Automotive,<br>Zeccardi, Concours, Zeccardi LLC,<br>Zeldin |

The Plan Administrator alleges that Debtor was insolvent from its formation in November 2016 and remained insolvent or operated in the "zone of insolvency" at all times relevant to the Complaint.[48]  Debtor's Summary of Assets and Liabilities indicates that it was balance-sheet insolvent on the petition date (with assets of $68,611,434 and liabilities of $72,086,042).[49]  The Complaint avers that Debtor sold not less than $10,429,072 out of trust in violation of its August 17, 2017 Inventory Agreement with TMCC.[50]

The Plan Administrator does not make a liquidated damage demand in the body of the Complaint, except to state that his aggregate damage demand for fraudulent transfers against all Defendants (not just the Moving Defendants) is $49,957,714.44.[51]  The specific, liquidated elements of his damage demands are embodied in four (4) Exhibits (A through D) that individually list each challenged transfer as to each Defendant for the one-, two- and four-year periods prepetition, with another, lesser demand for recovery of postpetition transfers to DeMaio or DeMaio entities (that is not relevant to these Motions to Dismiss).

---

[48] Compl. ¶ 49, Dkt. No. 1.
[49] Dec. 2, 2019 Summary, Main Dkt. No. 86.
[50] Compl. ¶¶ 91-92, Dkt. No. 1.
[51] Compl. ¶ 200, Dkt. No. 1.

In his preference demand, the Plan Administrator seeks recovery for insider preferences for up to one year prepetition (he has not carved out or isolated a separate demand for transfers that fall within the 90-day preference period only).  The Plan Administrator seeks the following aggregate recovery from the six (6) Defendants (individual and entity) that filed the instant Motions to Dismiss.  The amount listed in each shorter period is included in each longer period:[52]

| Transferee | One-year | Two-year | Four-year |
|---|---|---|---|
| Holtham | $   120,000.00 | $     301,250.00 | $     301,250.00 |
| Leonard Automotive (Toyota of Hackensack) | $1,010,345.18 | $  1,360,345.18 | $  1,491,697.28 |
| Zeccardi | $          0.00 | $             0.00 | $       2,000.00 |
| Concours | $6,500,670.60[53] | $12,074,453.60 | $16,092,687.60 |
| Zeccardi LLC | $   120,000.00 | $     303,300.00 | $     445,300.00 |
| Zeldin | $     63,000.00 | $     238,774.50 | $     359,644.50 |

E. The Motions to Dismiss

The Moving Defendants all filed their Motions to Dismiss (in lieu of Answer) on January 6, 2022.  Holtham also filed his Motion to Dismiss on behalf of Leonard Automotive.[54]  Zeccardi also filed his Motion to Dismiss on behalf of Concours Motors, Inc. (previously defined as "Concours") and Zeccardi LLC (collectively, the "Zeccardi Parties").[55]  Each Motion seeks complete dismissal of the Complaint.  DeMaio (through John P. DiIorio, Esq.) filed an Answer on January 6, 2022 and is not participating in these Motions.[56]  As noted above, the Plan Administrator filed a unitary objection to all three (3) Motions, and Holtham, Zeccardi and Zeldin filed timely replies.

---

[52] Compl., Exs. A-C, Dkt. No. 1.  Exhibit D involves DeMaio and his entities only and is not included here.

[53] The Plan Administrator states at IX.B.3 of his objection that he will voluntarily dismiss 90-day preference claims against Concours based on his prior settlement with certain Zeccardi-related parties.  Plan Admin. Obj. IX.B.3, at 42-43, Dkt. No. 34.

[54] Holtham Mot., Dkt. No. 14.

[55] Zeccardi Mot., Dkt. No. 22.

[56] DeMaio Answer, Dkt. No. 20.  DeMaio's Counsel, John DiIorio, Esq., eventually answered on behalf of three (3) other DeMaio-owned entities:

    CTE 2 Land LLC (Dkt. No. 33);
    DeMaio Holdings, LLC (d/b/a Norman Gale Buick GMC) (Dkt. No. 33);
    Infiniti of Englewood (Dkt. No. 21);
but not on behalf of CTE 2 LLC (d/b/a VW of Union).

Following the briefing of the Motions, the parties agreed to mediation and to adjourn all

the Motions to Dismiss pending the result of the mediation, which was ultimately not successful.

Oral argument was then scheduled and held on February 16, 2023.

## IV.  ARGUMENTS OF THE PARTIES

There is considerable overlap in the grounds for dismissal argued by each Movant.[57]  Both

Holtham and Zeccardi filed extensive opening and reply briefs.[58]  Zeccardi concurred in most of

Holtham's fundamental arguments and added detail to many.[59]  Zeldin incorporated Holtham's

brief by reference and added argument germane to his own assertedly more limited relationship to

the Debtor.[60]  Using the Holtham brief as an initial reference:

(i)     Holtham argues that the Plan Administrator  has not pleaded with the particularity
        required by Fed. R. Civ. P. 9(b) the Counts for fraud and other Counts that implicate
        misrepresentations (Counts 1 (Negligent Misrepresentation), 3 (Common Law Fraud),
        5 (Actual Fraud under 11 U.S.C. § 548(a)(1)(A), 6 (Actual Fraud under New Jersey
        Law), 7 (Constructive Fraud under 11 U.S.C. § 548(a)(1)(B)), 8 (Constructive Fraud
        under New Jersey Law)).[61]

        Holtham further argues that the Plan Administrator has not adequately pleaded and
        established insider status in Count 9 (Insider Preference).[62]

        Zeccardi concurs and makes additional argument as to why he is not an insider.

        As a consequence of the above, Holtham argues that claim disallowance fails (Count
        4).

        Zeccardi concurs and adds that the Plan Administrator's failure to fully and precisely
        list all his claims in the appropriate Exhibit to the DS and Plan (which had been jointly
        formulated by the UCC and Plan Administrator) estops him from challenging them
        now.  For example, the Plan Administrator alleged $5,921,743 in claims against
        Concours in the DS and Plan but seeks up to $12,074,453.60 now.

        The Plan Administrator argues that he has met the general and specific rules of pleading
        under Fed. R. Civ. P. 8(a) and 9(b); that he is entitled to a relaxed rule of special
        pleading, as he is an independent fiduciary; that many of his allegations derive from

---

[57] Briefs range in length from Holtham (45 pages); Zeccardi (37 pages); Zeldin (10 pages).
[58] Holtham Br., Dkt. No. 14-1.
[59] Zeccardi Br., Dkt. No. 22-1.
[60] Zeldin Br., Dkt. No. 23-1.
[61] Holtham Br., at 6-9, Dkt. No. 14-1.
[62] Holtham Br., at 8, 34-35, Dkt. No. 14-1.

13

pleadings filed by Defendants (including DeMaio) in the TMCC District Court Action and from Debtor's books and records; that the Moving Defendants, on their Motions to Dismiss, impermissibly raise facts outside the pleadings; and that he has established Defendants' insider status and duties to the Debtor based on their control of and participation in Debtor's affairs.[63]

(ii)    Holtham argues that breach of fiduciary duty (Count 2) fails on the grounds that:

(a)  Holtham was not a fiduciary by operation of the N.J. Revised LLC Act, N.J.S.A. § 42:2C-39 and relevant case law; he was a member, not a managing member.[64]

(b)  The Plan Administrator cannot bring this claim on behalf of Debtor's creditors because Debtor could not have brought such a claim itself, on the grounds that the individual claims of creditors such as TMCC and First Bank are not property of the estate and that no fiduciary duty runs from Debtor or its non-manager members to creditors in any event.[65]

Zeccardi concurs and argues that the Debtor's Operating Agreement and Voting Trust Agreement reposed fiduciary duties in DeMaio only and that Zeccardi assigned all his voting rights to DeMaio.

The Plan Administrator reiterates that the Moving Defendants' "involvement" with and alleged control over the Debtor created duties that obligated them to intervene in DeMaio's conduct.   The Plan Administrator argues both that RULLCA imposed residual duties that required the Defendants to act against DeMaio and that the Debtor was "member-managed."    The Plan Administrator does not acknowledge the limitations imposed on the Moving Defendants by the OA.[66]

(iii)   Holtham argues that negligent misrepresentation (Count 1) similarly fails on the grounds that:

(a)  The Plan Administrator does not have standing to bring this claim on behalf of Debtor against members for the benefit of creditors for the reasons set forth above.

(b)  Because TMCC and Holtham (and his affiliates) entered into a stipulated dismissal with prejudice of TMCC's claims against Holtham in TMCC's District Court Action (that Holtham argues was based on similar claims), all the Plan Administrator's claims against Holtham are barred by the Entire Controversy Doctrine (other than perhaps the preference claims).

(c)  As non-managing member, Holtham did not have an independent duty to Debtor and made no misrepresentation to creditors, with none being alleged by the Plan Administrator.

---

[63] Plan Admin. Obj., at 7-13, Dkt. No. 34.
[64] Holtham Br., at 9-12, Dkt. No. 14-1.
[65] Holtham Br., at 11-12, Dkt. No. 14-1.
[66] Plan Admin. Obj., at 18-24, Dkt. No. 34.

(d) To the extent that alleged negligent misrepresentation arose from contact with TMCC or First Bank, it cannot be sustained.[67]

Zeccardi concurs (other than as to the Entire Controversy Doctrine argument) and argues that the Disclosure Statement and Plan did not authorize or disclose a negligent misrepresentation cause of action and that, in any event, Debtor could not have brought that claim on its own behalf under *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir.), *cert. denied*, 574 U.S. 974 (2014) because such a claim was specific to the Debtor's creditors (TMCC and First Bank) and not general to the creditors.  Zeccardi also notes that TMCC dismissed its claims against Zeccardi; and First Bank never filed any.[68]

The Plan Administrator does not acknowledge *In re Emoral* but insists that he has standing by raising a "deepening insolvency" claim that is not pleaded as a cause of action in his Complaint (though deepening insolvency is referred to in various places).[69] The Plan Administrator argues that the "Debtor's" misrepresentations to creditors may be "imputed" to the Moving Defendants, even if these individuals did not make them directly.[70]

(iv)    Holtham argues that the Plan Administrator did not plead common law fraud with particularity in Count 3 on the grounds that:

(a) DeMaio (not Holtham) was the source on any misrepresentation; the Plan Administrator excessively makes allegations "on information and belief"; and

(b) that, even if the Plan Administrator alleged corporate veil-piercing to argue that Holtham was using the corporate form to advance his own interests, the Plan Administrator's claim would still fail.[71]

Zeccardi concurs and reiterates that any fraud claim belonged to a specific creditor and was not general to all creditors.[72]

The Plan Administrator argues that Moving Defendants' "fiduciary duty" and failure to correct DeMaio's misstatements mean that Moving Defendants intended that creditors rely on those misrepresentations and so amount to common law fraud (presumably by omission) by the Moving Defendants.[73]

---

[67] Holtham Br., at 12-18, Dkt. No. 14-1.
[68] Zeccardi Br., at 9-11, Dkt. No. 22-1.
[69] In the Complaint, the Plan Administrator mentions "deepening insolvency" at ¶¶ 113, 115, 118, 133-34, 163, 209, Compl., Dkt. No. 1 and, in his Brief, cites *NCP Litig. Trust v. KPMG*, 399 N.J. Super. 606, 627 (Law Div. 2007) (in denying motion to dismiss in part, recognizing deepening insolvency as a practical cause of action).  Plan Admin. Obj., at 31, Dkt. No. 34.
[70] Plan Admin. Obj., at 33, Dkt. No. 34.
[71] Holtham Br., at 18-21, Dkt. No. 14-1.
[72] Zeccardi Br., at 10-11, Dkt. No. 22-1.
[73] Plan Admin. Obj., at 26-27, Dkt. No. 34.

(v) Holtham argues that certain Counts should be dismissed on grounds of "*in pari delicto*," that is, that the *Debtor's* wrongdoing bars the Debtor from bringing claims against the Moving Defendants (Counts 1, 2, 3 and 11 (Unjust Enrichment)).[74]

The Plan Administrator argues that the *in pari delicto* defense is not available to the Moving Defendants that generated the harm done by the Debtor and is not available at the pleading stage.[75]

(vi) Holtham argues that the Plan Administrator has failed to state a claim for unjust enrichment (Count 11). Holtham avers that the Plan Administrator has not established how Holtham's actions conferred a benefit on himself or Leonard Automotive.[76]

Zeccardi seems to concur, though his argument is more focused on the failure of unjust enrichment as a stand-alone claim under New Jersey law.[77]

The Plan Administrator argues that the outflow of money from Debtor to the Moving Defendants partly establishes a claim for unjust enrichment and invites investigation of what Debtor received in return, so that dismissal of this claim is premature at the pleading stage.[78]

(vii) Holtham argues that the Plan Administrator has failed adequately to allege receipt by the Debtor of transfers by Holtham or Leonard Automotive under all the avoidance actions (Counts 4 (Claim Disallowance), 5, 6, 7, 8 and 9). Holtham asserts that the Complaint references transfers by DeMaio rather than by the Debtor (even though the Exhibits to the Complaint are alleged to show transfers by the Debtor to each of the Defendants by dates, dollar amount and payee); that the Plan Administrator has merely recited the elements of the statute(s); and that N.J.S.A. § 25:2-25(a)(1) was not in effect when the alleged transfers occurred.[79]

Zeccardi concurs with more detailed argument that the Plan Administrator has failed to allege lack of reasonably equivalent value with the required particularity; that N.J.S.A. § 25:2-27(b) has only a one-year look back period; and that the Plan Administrator has failed to allege the elements of preference with particularity (as to consideration, actual transfers). Zeccardi also complains about misjoinder of claims and defendants under Rule 20(a)(2).[80]

The Plan Administrator argues that his description of the Moving Defendants' and DeMaio's "systemic looting" of Debtor plus the poor condition of Debtor's books and records "clearly states plausible claims for constructive fraudulent transfer" under

---

[74] Holtham Br., at 21-23, Dkt. No. 14-1.
[75] Plan Admin. Obj., at 32-35, Dkt. No. 34.
[76] Holtham Br., at 24-25, Dkt. No. 14-1.
[77] Zeccardi Br., at 34-36, Dkt. No. 22-1.
[78] Plan Admin. Obj., at 49-50, Dkt. No. 34.
[79] Holtham Br., at 25-34, Dkt. No. 14-1.
[80] Zeccardi Br., at 23-27, Dkt. No. 22-1.

bankruptcy and state statutes and that the challenged transfers are specifically identified in the Exhibits to the Complaint.[81]

(viii)  Zeccardi further argues that the claims against Zeccardi LLC are barred by the Plan Administrator's settlement with Zeccardi and Concours and that neither he nor Concours was a statutory insider.[82]

The Plan Administrator argues that he made no settlement with Zeccardi LLC; that he will voluntarily dismiss his preference claims against Concours (these apparently precluded by the settlement); and that Zeccardi potentially breached confidentiality by even referring to the settlement.[83]

## V.    LEGAL STANDARDS AND ANALYSIS

A.  <u>Relevant Rules of Procedure</u>

(i)    <u>Motions to Dismiss under Fed. R. Bankr. P. 7012 / Fed. R. Civ. P. 12(b)(6)</u>

Fed. R. Civ. P. 12(b)(6), incorporated into Fed. R. Bankr. P. 7012(b), allows a defendant to move to dismiss any action for failure to state a claim upon which relief can be granted by motion made before the responsive pleading is filed.  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012.  To decide a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citation omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The pleadings

---

[81] *See, e.g.,* Plan Admin. Obj., at 41, 47, Dkt. No. 34.
[82] Zeccardi Br., at 28-32, Dkt. No. 22-1.
[83] Plan Admin. Obj., at 37, 42, Dkt. No. 34.

must raise the possibility, though not the probability, of the conduct complained of and show "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

Under these standards, the Court undertakes a two-part analysis which requires it:  (1) to identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action; and then (2) to draw upon its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief.  *Iqbal*, 556 U.S. at 678-79.  The Court "generally consider[s] only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" along with authenticated documents which form the basis of the claim.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  A court may also take judicial notice of a prior judicial opinion.  *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009); *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Finally, and significantly for purposes of these Motions, the Court is not required to resolve factual disputes or to address defenses that are not apparent from the face of the Complaint on a motion to dismiss.  *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175-76 (3d Cir. 2015); *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657-58 (3d Cir. 2003); *Kalan v. Farmers & Merchants Trust Co. of Chambersburg*, 2015 WL 13874054, at *1 n.1 (E.D. Pa. Nov. 25, 2015).  *See also Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y.), *recons. denied*, 431 F. Supp. 2d 425 (S.D.N.Y. 2006) ("fact-intensive analysis . . . ordinarily does not lend itself to a motion to dismiss"); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998) ("The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"); *Lombardo*

18

*v. Town of Hempstead*, 2020 WL 7021603, at *2 (E.D.N.Y. Nov. 30, 2020) ("Accepting Defendants' version of the facts as stated in their objections . . . would require the Court to make factual findings that may not be made upon a motion to dismiss.").

 (ii) <u>General Rules of Pleading under Fed. R. Bankr. P. 7008 / Fed. R. Civ. P. 8(a); and Pleading Special Matters under Fed. R. Bankr. P. 7009 / Fed. R. Civ. P. 9(b)</u>

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The purpose of the "short and plain statement" is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Fed. R. Civ. P. 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) applies to actual fraud claims brought under § 548 of the Bankruptcy Code; however, as it relates to constructive fraud, "the great majority of cases hold that since a cause of action based on constructive fraud does not require proof of fraud, the heightened pleading requirements of Rule 9(b) are not applicable." *In re Actrade Fin. Techs., Ltd.*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2000); *see also In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008) ("Rule 9(b) does not apply to claims sounding in constructive fraudulent transfer, . . . and allegations of a constructive fraudulent transfer are subject to less rigorous pleading requirements."). This Court will adopt the majority rule as better-reasoned because a constructive fraudulent transfer claim does not require proof of actual fraud and hold that Rule 9(b) pleading requirements do not apply to claims based on constructive fraudulent transfers.

However, actual fraudulent transfer claims must generally be pleaded with particularity in bankruptcy proceedings (as well as outside them).  *See In re Oakwood Homes Corp.*, 325 B.R. 696, 698-99 (Bankr. D. Del. 2005).   In addition to actual fraud, the heightened pleading requirements of Rule 9(b) apply "to claims under any legal theory whose supporting factual allegations 'sound in fraud.'"  *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 360 (D.N.J. 2021).   "As a result, if negligent misrepresentation, equitable estoppel, or promissory estoppel claims are based on intentional misrepresentations or knowingly false promises, Rule 9(b) applies." *Id.*[84]

While recognizing those general precepts, the cases also acknowledge that, in the bankruptcy setting, a less burdensome standard may be imposed on a Trustee who typically does not have actual knowledge of the underlying transactions.   Thus, various Courts have held, and this Court generally agrees that, "in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee . . .  is bringing the action." *In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2004) (internal citation omitted); *see also In re DBSI*, *Inc.*, 2011 WL 1810632, at *3 (Bankr. D. Del. May 5, 2011) ("Rule 9's requirements, however, are relaxed in the bankruptcy context, particularly in cases such as the present in which a trustee has been appointed.").   In addition, "the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).   In this case, the Plan Administrator argues in his objection that the allegations in his Complaint:

> are predicated upon and derived largely from the Members' own pleadings filed in the TMCC Action, as well as from the Debtor's own books and records, and the

---

[84] Here, the Plan Administrator's negligent misrepresentation claim appears to rely principally on omissions of material fact; however, the Plan Administrator also asserts that the "Defendants . . . caused the Debtor to misrepresent (or recklessly and negligently permitted DeMaio to cause it to misrepresent) its financial condition . . . ."  Compl. ¶ 185, Dkt. No. 1.

Plan Administrator's further initial investigatory activities, including witness interviews.[85]

The Court will next apply these standards to the facts of this case as alleged in the Complaint in analyzing the legal sufficiency of the Plan Administrator's claims in this case.

B. <u>The Moving Defendants Did Not Owe Fiduciary Duties to the Debtor</u>

(i)     <u>The General Standards</u>

In New Jersey, limited liability companies are organized pursuant to the Revised Uniform Limited Liability Act ("RULLCA").  Under the RULLCA, a limited liability company is presumed to be member-managed unless the OA:  (i) provides that the company will be manager-managed, (ii) provides that the management of the company will be vested in managers, or (iii) includes similar language.  N.J.S.A. § 42:2C-37(a)(1)-(2).  The Legislature intended that RULLCA "be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."  N.J.S.A. § 42:2C-11(i).  Consistent with that intent, New Jersey courts have read this language plainly and found that the OA must state only that the company will be manager-managed to rebut the presumption of member-management.  *See Decandia v. Anthony T. Rinaldi, LLC*, 2020 WL 5888037, at *6 (N.J. Super. Ct. App. Div. Oct. 5, 2020) ("The limited liability operating agreement governing plaintiff's employment with the LLC clearly stated it was a manager-managed LLC."); *Cajoeco LLC v. Bensi Enters., LLC*, 2021 WL 2472382, at *10 (N.J. Super. Ct. App. Div. June 17, 2021) ("[T]he Bensi Enterprises operating agreement vested John, as the "Managing Member" of the LLC, with exclusive authority to manage the LLC . . . . Thus, Bensi Enterprises was manager-managed.").

With respect to fiduciary duties, the RULLCA states that, in a manager-managed LLC, the fiduciary duties of loyalty and care apply only to managers.  N.J.S.A. § 42:2C-39(a) and (i)(1).

---

[85] Plan Admin. Obj., at 10, Dkt. No. 34.

Conversely, absent an affirmative grant in the OA, members of a manager-managed LLC do not owe duties of loyalty and care.[86]  N.J.S.A. § 42:2C-39(a) and (i)(1).   Numerous courts have so held.  *See, e.g., In re 3P Hightstown, LLC*, 631 B.R. 205, 213 (Bankr. D.N.J. 2021) (absent a contrary provision in the OA of an LLC, only managing members owe traditional fiduciary duties of loyalty and care . . . .  In the absence of management responsibility and control, members of an LLC do not owe fiduciary duties of loyalty and care to each other under New Jersey law.");  *Cajoeco LLC*, 2021 WL 2472382, at *14 ("members of a limited liability company that is manager-managed do not owe each other fiduciary duties"); *Decandia*, 2021 WL 5888037, at *6 ("The facts clearly showed that the LLC was a manager-managed LLC and plaintiff was only a member.  Therefore, N.J.S.A. § 42:2C-39 imposed no duty upon plaintiff; as a result, we vacate the judge's determination that plaintiff breached this statutory duty.").

      (ii)      <u>Only DeMaio, the Sole Manager, is Charged with Fiduciary Duties Under the Operating Agreement and New Jersey Law</u>

Here, the OA expressly provides, under the heading of "Management and Authority," that the Debtor was a manager-managed LLC, with DeMaio serving as Operating Manager.  In this regard, Article 5.1 of the OA states that, except as otherwise expressly provided in the OA or the Act, "[t]he property, business and affairs of the Company shall be managed by the Operating Manager" and "the Members shall have no right to control or manage, nor shall they take any part in the control or management of the property, business or affairs of the Company."  Thus, the plain language of the OA provides that the Debtor is manager-managed.  Further, nothing in the OA imposed any duty of loyalty or care upon the non-manager members.  Those duties are expressly and exclusively ascribed to DeMaio.[87]

---

[86] However, as is described in more detail below, even in a manager-managed LLC, the RULLCA provides that members cannot waive the contractual duties of good faith and fair dealing.  N.J.S.A. §§ 42:2C-11(c)(5), 39(d) and 39(i)(2).

[87] Soranno Decl., OA §§ 5.6 and 5.7, Ex. B, Dkt. No. 14-2.

The Plan Administrator argues that determining whether the OA imposes fiduciary duties on the Moving Defendants is a question of fact.  However, the OA is a contract.  Accordingly, "its interpretation is a question of law," where the language is unambiguous, as is the case here.  *See Hess Corp. v. ENI Petroleum US, LLC*, 435 N.J. Super. 39, 46-47 (App. Div. 2014).  Thus, based on the plain language of the OA, this Court finds that the Debtor was manager-managed; that DeMaio served as its only manager; and that the other members had no right to manage or control the Debtor under the OA.

As the result of these determinations and the case and statutory law cited above, the Court agrees with the Moving Defendants that, under the OA and applicable law, Holtham, Zeccardi and Zeldin, as non-managing members (who each individually owned a minority of the Debtor's interests) did not owe fiduciary duties of loyalty and/or care to the Debtor (or each other).  The Plan Administrator at least implicitly acknowledges the legal standards cited above, but argues that the determination of whether Holtham, Zeccardi and Zeldin were in control of the Debtor, based on their actions and their combined majority ownership interest in the Debtor, gives rise to questions of fact that cannot be decided on a motion to dismiss.  The Plan Administrator further argues that the RULLCA was intended to protect only "truly passive" investors.  For the reasons discussed below, the Court disagrees with these arguments.

(iii)    The Plan Administrator's "Control" Argument

As to the Moving Defendants' alleged control, the Plan Administrator argues that, because he has alleged that Holtham and Zeccardi involved themselves in the financial management of the Debtor and knew that DeMaio was bribing Toyota employees; because Holtham retained his own accountants to investigate the Debtor's financial affairs; because DeMaio and Holtham arranged for the $6 million loan from First Bank to fund a buyout of Holtham (that DeMaio instead used to pay personal expenses and expenses of the Debtor and/or other DeMaio entities); and because

23

Zeccardi was regularly at the dealership, often without DeMaio, and conducted extensive business with the Debtor through Concours, a question of fact arises as to whether at least Holtham and Zeccardi were in control of the Debtor.[88]  However, that would require the Court to disregard not only the plain language of the OA cited above, but the Legislature's express intent that the RULLCA "be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."  N.J.S.A. § 42:2C-11(i).  Instead, adopting the Plan Administrator's argument in this regard would require the Court to construe the OA narrowly and decline to enforce the OA according to its terms.  Moreover, adopting the Plan Administrator's argument would place non-manager members at risk for investigating what they may believe is wrongdoing by the manager-member, with the result that they may become liable for breach of fiduciary duties they did not undertake.

Additionally, the alleged "control" asserted by the Plan Administrator does not amount to more than hiring an accountant to investigate the Debtor, meeting with the manager-member, doing business with the Debtor, arranging a loan to the Debtor that DeMaio misappropriated and having the right to vote DeMaio out but failing to do so.  Those assertions do not give rise to control of the Debtor, especially in the face of an OA that expressly gives that control to the manager member.  At most, they indicate the other members were monitoring their investment, transacting business with the Debtor and meeting with their manager, as they were certainly entitled to do.  While those actions, if somehow independently wrongful in and of themselves, may possibly give rise to other causes of action, they do not constitute control over the Debtor.

Further, having the ability to potentially vote DeMaio out does not create a fiduciary duty that the RULLCA excludes.  Instead, it means that the other members could vote in someone else

---

[88] Notably absent from these arguments is even any alleged involvement by Zeldin.  This is another reason the breach of fiduciary duty claims fail against Zeldin.

who would assume those duties (and control of the Debtor).  It does not mean that those duties were somehow transferred to the non-managing members.  And finally, DeMaio's unauthorized activities, including the alleged misappropriations and bribes, and the improper use of proceeds of the $6 million First Bank loan demonstrate the Moving Defendants' lack of control.  In fact, the Plan Administrator himself alleges that DeMaio operated the Debtor "without guardrails" and "with impunity," which confirms that the Moving Defendants lacked control over DeMaio and the Debtor.  And finally, there is no evidence, or any allegation, that the Moving Defendants actually did exercise any such control over the Debtor -- only that they could and should have.  *See., e.g., Winstar Comm's, Inc. v. Lucent Techs., Inc.* (*In re Winstar Comm's, Inc.*), 554 F.3d 382, 396 (3d Cir. 2009) (in the context of insider definition of 11 U.S.C. § 101(31)(B)(iii), control means the ability "to unqualifiably dictate corporate policy and the disposition of corporate assets") (internal citations omitted).  As noted, the OA gave that control to DeMaio, and the Complaint alleges that he exercised that control to the detriment of the Debtor.

In sum, because the language of the OA is clear and unambiguous, as is the Legislature's intent in adopting the RULLCA, the Court finds as a matter of law that the Moving Defendants did not owe fiduciary duties of loyalty and care to the Debtor (or any other person or party).  The Court finds that no question of fact needs to be resolved, nor is any discovery required, to make this determination.

In this regard, the Plan Administrator correctly notes that, in the *Cajoeco* case, which is heavily relied upon by the Moving Defendants, the issue of control was decided on defendants' motion to dismiss on summary judgment after discovery and that discovery should similarly be allowed here.  The Court is not persuaded by this argument.  While it is true that *Cajoeco* was

decided after discovery had been taken,[89] numerous other cases cited by the Defendants have in

similar circumstances dismissed the breach of fiduciary duty claims as a matter of law and/or in

the context of a motion to dismiss under Rule 12(b)(6) or its state law equivalent.  *See, e.g.,*

*Decandia v. Anthony T. Rinaldi, LLC*, 2020 WL 5888037, at *3 and *6 (N.J. App. Div. Oct. 5,

2020) (under New Jersey law) (Appellate Division reversed, as a matter of law, trial court's

finding that plaintiff had breached his statutory and common-law duty of loyalty to his

employer because the operating agreement made the employer a manager-managed entity and

imposed no such fiduciary duty on the employee; N.J.S.A. § 42:2C-39 imposed duty of loyalty

only upon the manager); *In re 3P Hightstown, LLC*, 631 B.R. 205, 213-214 (Bankr. D.N.J. 2021)

(under Delaware law) (Bankruptcy Court *sua sponte* dismissed this Chapter 11 case, as improperly

filed, finding as a matter of law that the operating agreement imposed no fiduciary duties on the

filing party, who was a non-managing member and had no authority to file the petition); *In re S.*

*Canaan Cellular Invs., LLC,* 2010 WL 3306907, at *4, *6-*8 (E.D. Pa. Aug 16, 2010) (under

Delaware law) (the District Court affirmed the Bankruptcy Court's dismissal of the complaint

against part-owner, a non-managing member, for breach of fiduciary duties on the grounds that

the operating agreement and the Delaware LLC Act, 6 Del. Code § 18-1101 imposed no fiduciary

duties on him; the District Court reversed only on the Bankruptcy Court's decision not to grant the

plaintiff one opportunity to amend the  complaint); *In re PennySaver USA Publishing, LLC*, 587

B.R. 445, 463-66 (Bankr. D. Del. 2018) (under Delaware law) (the Bankruptcy Court granted the

individual defendants' Rule 12(b)(6) motion(s) to dismiss the Chapter 7 Trustee's claims for

---

[89] A review of the State Court docket in the *Cajoeco* case indicates that no motion to dismiss claims based on breach
of fiduciary duty and/or defendant's alleged control was filed.  Thus, it does not appear that the *Cajoeco* Court was
asked to address the legal sufficiency of these claims prior to the taking of discovery.  Therefore, the fact that the
breach of fiduciary duty and control issues were decided on summary judgment is of little or no relevance here.

breach of fiduciary because the Trustee had insufficiently pleaded, under Delaware law and based on the defendants' positions in the company, that they exercised control).

Accordingly, this Court is finds that, because the OA is clear and unambiguously describes DeMaio as the Managing Member and the only member on whom fiduciary duties are imposed, and because the Plan Administrator has not sufficiently alleged that the Moving Defendants were in control of the Debtor in any event, the breach of fiduciary duty claims are ripe for dismissal at this time under Fed. R. Civ. P. 12(b)(6).

(iv)    The Plan Administrator's Policy Argument

The Plan Administrator also makes the related argument that the elimination of fiduciary duties under the RULLCA was designed to protect "truly passive" investors, and that the Plan Administrator has sufficiently alleged that Holtham, Zeccardi and/or Zeldin were actively engaged in the management and/or control of the Debtor's business.[90]  The Plan Administrator cites no cases or legislative history in support of his "truly passive" investor argument, which is by itself reason enough to reject it.  Further, adding this type of gloss to the interpretation of the statute would be in derogation of its plain language and the Legislature's expressly stated intent that the RULLCA "be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."  N.J.S.A. § 42:2C-11(i).  The interpretation advanced by the Plan Administrator would add words to the statute that simply are not there and create significant uncertainty as to the meaning and effect of that plain language and the enforceability of operating agreements.  In other words, allowing this undefined and unsupported policy argument to prevail would eliminate the certainty the RULLCA was intended to provide and create an effective exception to the OA's enforceability that would potentially swallow the rule.

---

[90] Plan Admin. Obj., at 23, Dkt. No. 34.

For all these reasons, the Court will dismiss the breach of fiduciary duty claims against the Moving Defendants that are based on the duties of care and loyalty, without prejudice to the Plan Administrator's rights to seek to amend his Complaint within forty-five (45) days to attempt to remedy the deficiencies described above.  If no timely motion to amend is filed (as such time may be extended by written agreement of the parties or Order of the Court), these claims will be dismissed with prejudice.

    (v)    <u>The Members Owe a Duty of Good Faith and Fair Dealing to the Debtor</u>

The Plan Administrator argues that even if the OA precludes the breach of fiduciary duty claims against Holtham, Zeccardi and Zeldin, the RULLCA does not allow the elimination of the members' separate duty of good faith and fair dealing under N.J.S.A. §§ 42:2C-11(c)(5), 39(d) and 39(i)(2).  For the reasons set forth below, the Court agrees.

N.J.S.A. § 42:2C-11 ("Operating agreement; scope, function and limitations") states in relevant part at subsection (c)(5):

> c.  An operating agreement may not:
>
>   (5)  subject to subsections d. through g. of this section, eliminate the contractual obligation of good faith and fair dealing under subsection d. of section 39 of this act.

N.J.S.A. § 42:2C-11(c)(5) (footnote cross-reference omitted).  N.J.S.A. § 42:2C-39 ("Standards of conduct for members and managers") states in relevant part at subsections (d) and (i):

> d.  A member shall discharge the duties under this act or under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing. . . .
>
> i.  In a manager-managed limited liability company, the following rules apply:
>
>   (1) Subsections a. [loyalty and care], b. [enumerating duties of loyalty], c. [care] and g. [defenses] of this section apply to the manager or managers and not the members, and the duty stated under paragraph (3) of subsection b. of this section continues until winding up is completed.

(2) Subsections d. [good faith, fair dealing and compliance with OA] and e. [no violation of OA merely because member's conduct furthers member's interest] of this section apply to the managers as well as the members and, subject to subsection d. of this section, a member does not have any duty to the company or any other member solely by reason of being a member.

(3) The power to ratify stated in subsection f. of this section pertains only to the members.

N.J.S.A. § 42:2C-39(d) and (i).

Based on these statutory provisions, a different result obtains with respect to the Plan Administrator's claims for breach of the duty of good faith and fair dealing but for similar reasons: a plain-language interpretation of the OA and RULLCA.  The Court finds that N.J.S.A. § 42:2C-39(i)(2) precludes the elimination of the duty of good faith and fair dealing by members of the LLC.

In this regard, the Court also notes that the limitation of liability provisions in the OA relied upon by the Moving Defendants, §§ 5.6, 5.7, 5.8, refer only to the affirmative duties of the Operating Manager and limitations on *his* liabilities.[91]  Non-managing members are not mentioned. Further, even if these sections applied to non-manager members, they do not mention (or much less attempt to eliminate) the duty of good faith and fair dealing.  And, in any event, the RULLCA expressly precludes the complete elimination of the duty of good faith and fair dealing.  *See* N.J.S.A. §§ 42:2C-11(c)(5), 39(d) and 39(i)(2).  Thus, the Motions to Dismiss are denied to the extent they assert claims for breach of the duty of good faith and fair dealing by the non-managing members in their dealings with the Debtor, as alleged in the Plan Administrator's Complaint. Those potential breaches include the alleged looting and waste of Debtor's assets, failure to account for vehicle inventory and the numerous transactions between and among the Debtor, the

---

[91] Zeccardi Br., at 18-19, Dkt. No. 22-1.

Moving Defendants, their families and friends, many (or all) of which have no discernable purpose based on the Debtor's books and records, according to the Plan Administrator.[92]

C. Whether the Moving Defendants May Be Considered Statutory or Non-statutory Insiders of the Debtor

The parties also dispute whether the non-managing members (i.e., the Moving Defendants) may be considered statutory or "non-statutory" insiders.  In this regard, the Plan Administrator generally pleads that the Moving Defendants are insiders under 11 U.S.C. § 101(31)(B) and appears to focus primarily on the "control" subsection, but also makes a passing reference to affiliate status in his Objection.[93]  11 U.S.C. § 101(31)(B) and (E) define an "insider" as:

> (B) if the debtor is a corporation –
>     (i) director of the debtor;
>     (ii) officer of the debtor;
>     (iii) person in control of the debtor;
>     (iv) partnership in which the debtor is a general partner;
>     (v) general partner of the debtor; or
>     (vi) relative of a general partner, director, officer, or person in control of the debtor
> . . .
>
> (E) affiliate, or insider of an affiliate as if such affiliate were the debtor[.][94]

---

[92] *See e.g.*, Compl. ¶ 113, Dkt. No. 1.

[93] Compl. ¶ 2, Dkt. No. 1; Plan Admin. Obj., at 39, Dkt. No. 34.  Insider status for a limited liability company is determined by reference to subsection (B) relating to corporations, as is acknowledged by the Plan Administrator and the Zeccardi Parties.  Plan Admin. Obj., at 39, Dkt. No. 34; Zeccardi Br., at 29, Dkt. No. 22-1.  *See., e.g., Stanger v. Miller* (*In re Miller Homes, LLC*), 2009 WL 4430267, at *2-*3 (Bankr. D.N.J. Nov. 25, 2009).

[94] "Affiliate" is defined by 11 U.S.C. § 101(2) as:
    (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . .
    (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . .
    (C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or
    (D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

Here, the Court will first analyze whether the Moving Defendants qualify as statutory insiders as persons "in control" or "affiliates" of the Debtor.[95]

(i)    <u>Persons in Control</u>

The Third Circuit has found that actual control is "necessary for a person or entity to constitute an insider under § 101(31)[(B)(iii) and (C)(v)]'s 'person in control' language." *Winstar Comm's, Inc. v. Lucent Techs., Inc.*, 554 F.3d 382, 396 (3d Cir. 2009).  "Actual control" has been defined as "the ability of the creditor to 'unqualifiably dictate corporate policy and the disposition of corporate assets,' *id.*, or the 'legal right or ability to exercise control over a corporate entity.'" *In re U.S. Medical, Inc.,* 531 F.3d 1272, 1279 (10th Cir. 2008) (quoting *In re Three Flint Hill Ltd. P'ship*, 213 B.R. 292, 299 (D. Md. 1997) and *In re Krehl,* 86 F.3d 737, 743 (7th Cir. 1996)). This determination requires:

> an examination of the facts and particularly whether or not the facts indicate an opportunity to self-deal or exert more control over the Debtor's affairs than is available to other creditors. . . . <u>Obviously actual management of the Debtor's affairs equals control</u>. . . . Actual management means controlling such things as the Debtor's personnel or contract decisions, production schedules or accounts payable.

*In re ABC Elec. Servs., Inc.,* 190 B.R. 672, 675 (Bankr. M.D. Fla. 1995) (emphasis supplied) (citations omitted).

As with his fiduciary duty argument, the Plan Administrator asserts that the Moving Defendants qualify as persons in control.  As noted, the Complaint alleges that the Defendant Members were actively involved in and in control of the Debtor's operations by (among other things) meeting with DeMaio, conducting business with the Debtor, hiring an accountant to review the Debtor's books and records (by Holtham) and having the right to vote out DeMaio.[96]  The Plan

---

[95] The Debtor, in its December 2, 2019 Statement of Financial Affairs includes Zeccardi and Zeldin (but not Holtham) in its list of payees that received money within ninety (90) days prepetition and identifies these payments as "Insider – Payroll."  Dec. 2, 2019 SoFA Part 2 ¶ 3, ECF p. 168, Dkt. No. 86-7.  That list also identifies Concours as an "Insider" that received $1,861,200 within ninety (90) days prepetition.  Dec. 2, 2019 SoFA Part 2 ¶ 3, ECF p. 167, Dkt. No. 86-7.

[96] Compl. ¶¶ 30-32, 34, 122-23, 126-32, 157-63, 171-72, 179, Dkt. No. 1.

Administrator also contends that, although the Defendant Members were minority equity holders, they collectively had a majority ownership and thus were effectively in control. In this regard, the Plan Administrator notes that the Moving Defendants also signed guarantees of the Debtor's indebtedness to TMCC. In support of his position, the Plan Administrator relies on cases such as *Miller v. Welke (In re United Tax Grp., LLC)*, 2018 Bankr. LEXIS 1290, at *12-*16 (Bankr. D. Del. Apr. 26, 2018), in which the Bankruptcy Court held that the Trustee had alleged sufficient facts regarding defendant's insider status (that defendant held 9.99% ownership interest in the debtor; that defendant testified that he was "known" by debtor's employees as "part of the ownership structure"; and that defendant held and used authority to sign various documents, including loans and guaranties) to withstand defendant's motion to dismiss the Trustee's preference action. However, the *United Tax Group* case is distinguishable because the defendant was signing documents on behalf of the limited liability corporation. That is not alleged here. The guarantees signed by the Moving Defendants were in their individual capacity, rather than on behalf of the corporate entity, as was the case in *United Tax Group*.[97]

As was noted previously, the allegations of control here are based on meeting with the managing member and having the ability to replace him, doing business with the Debtor, Holtham's assistance in arranging a loan that the Debtor misappropriated and hiring an accountant to review the Debtor's finances. As before, these allegations do not amount to control, or much less "actual control." As the Moving Defendants note, the Plan Administrator alleges that DeMaio

---

[97] As to the Moving Defendants signing guarantees individually, *see, e.g.*, Compl. ¶¶ 40, 44, 58-61, 63, 66-67, 72-75, 79-81, 83-85, 103, 117, 132, 166, 171, 174, 176, Dkt. No. 1. The Plan Administrator also relies on *In re Promed Informatics, Inc.*, 2007 WL 433372, at *2 (Bankr. D.N.J. Jan. 31, 2007), where the Court declined to dismiss an avoidance action against an alleged insider who held a 25% interest in debtor. However, in this case, the only Moving Defendant with an interest of 20% or more in the Debtor is Holtham. Thus, Holtham is the only Moving Defendant as to which *In re Promed* and the 20% insider affiliate status could arguably apply. Further, as is discussed in more detail, *infra* at Part V.C(ii), it is unclear at this time whether the Plan Administrator is alleging that Holtham is an insider as an "affiliate" and what the effect, if any, of the Voting Trust Agreement was on his status as an affiliate insider.

operated the Debtor "without guardrails" and "with impunity," which describes a lack of control, and that the Moving Defendants acted with "reckless indifference."[98] That alleged "indifference" (which is also introduced in various manners by the Complaint) does not result in control, and the Plan Administrator has not cited any case that holds to the contrary.

Thus, to the extent that the "insider" claims against the Moving Defendants are based on their alleged individual or combined "actual control" of the Debtor, they are dismissed, without prejudice to the Plan Administrator's right to seek to amend the Complaint to address the deficiencies described above.

(ii)    <u>Affiliate Status</u>

The Plan Administrator also appears to generally allege that the Moving Defendants may be statutory insiders by virtue of their individual or combined ownership of the Debtor.  An "affiliate" is a different category of entity that may be considered an "insider" and is defined as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. § 101(2)(A).  However, it is not at all clear to the Court whether the Moving Defendants fall under this definition (or whether the Plan Administrator is asserting "affiliate" status), as the Complaint only generally alleges insider status under § 101(31) without specifying a subsection, other than generally referring to the Moving Defendants as persons "in control."

In any event, in this case, only Holtham exceeds the twenty percent (20%) threshold set forth in the applicable portions of § 101(31)'s affiliate and insider definitions (excluding DeMaio), and no case has been cited by the Plan Administrator that would allow the interests of different members to be combined or added together to reach the 20% threshold.  Thus, only Holtham would

---

[98] Compl. ¶ 157, Dkt. No. 1 (as to "without guardrails" and "with impunity").  *See, e.g.*, Compl. ¶¶ 32, 136, Dkt. No. 1.  *Cf.* Plan Admin. Obj., at 39, Dkt. No. 34 (referring to the "affiliate" definition).  *See, e.g.*, Compl. ¶¶ 137, 157, Dkt. No. 1 (as to "reckless indifference").

arguably qualify as an "affiliate" insider.  However, as noted above, this is not clearly pleaded by the Plan Administrator.  Accordingly, this aspect of the Plan Administrator's argument will also be rejected and the Complaint dismissed without prejudice to the Plan Administrator's right to seek to amend the Complaint to sufficiently allege insider status under the specific subsection(s) of 11 U.S.C. § 101(31) that he claims are applicable as to Holtham, Zeccardi and Zeldin (the latter two of which do not meet the 20% threshold for affiliate status in any event).  As before, the Plan Administrator will have forty-five (45) days to seek to amend his Complaint in this regard as well, in default of which these claims (based on the statutory insider status of any or all the Moving Defendants) will be dismissed with prejudice.

Here, the Court also notes that, Holtham and, perhaps to a lesser extent, Zeccardi and Zeldin, argue that they assigned their voting rights to DeMaio pursuant to the Voting Trust Agreement.  According to these Defendants, the Voting Trust Agreement further demonstrates that they were not in control of the Debtor, even with their combined majority vote.  The problem with this argument is that, as previously noted, no fully-executed or completed Voting Trust Agreement has been provided to the Court; only the incomplete and unexecuted form of Voting Trust Agreement attached to the OA has been provided.  Thus, to the extent that any alleged Voting Trust Agreement may be considered on this Motion to Dismiss (which is at least questionable), it has not been sufficiently demonstrated that any actual Voting Trust Agreement was in effect as to any or all the Moving Defendants (or even when it may have been in effect).  These factual issues are not properly decided on a motion to dismiss.  *See Flora v. Cty. of Luzerne*, 776 F.3d 169, 175-76 (3d Cir. 2015); *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657-58 (3d Cir. 2003); *Kalan v. Farmers & Merchants Trust Co. of Chambersburg*, 2015 WL 13874054, at *1 n.1 (E.D. Pa. Nov. 25, 2015).  Thus, to the extent any of the Moving Defendants' Motions to Dismiss are based on the Voting Trust Agreement, those arguments are rejected by the Court at this time.  If and to

the extent it becomes necessary during the course of this case, the parties shall have the right to

take discovery and to provide other evidence as to the effectiveness of the Voting Trust Agreement.

(iii)    <u>Non-Statutory Insider Analysis</u>

In addition to the statutory definition of an "insider," courts have identified a category of

parties, known as non-statutory insiders, "who fall within the definition but outside of any of the

enumerated categories." *Winstar Comm's*, 554 F.3d at 395.  As has been noted by various courts,

"Congress intended an 'expansive view of the scope of the insider class, suggesting that the

statutory definition is not limiting and must be flexibly applied on a case-by-case basis.'" *Stanger*

*v. Miller (In re Miller Homes, LLC)*, 2009 WL 4430267, at *2-*3 (Bankr. D.N.J. Nov. 25, 2009

(quoting *In re Lull,* 2009 WL 3853210, at *4 (Bankr. D. Haw. Nov. 17, 2009)).   The Court in *In*

*re Miller Homes* continued:

> "[I]nsider status may be based on a professional or business relationship with the
> debtor, in addition to the Code's per se classifications, where such relationship
> compels the conclusion that the individual or entity has a relationship with the
> debtor, close enough to gain an advantage attributable simply to affinity rather than
> to the course of dealings between the parties."

*In re Miller Homes*, 2009 WL 4430267, at *6 (quoting *In re AFI Holding, Inc.,* 530 F.3d 832, 849

(9th Cir. 2008)).

Determining whether a defendant qualifies as a non-statutory insider requires looking to

the "closeness of the relationship" between the parties and as to whether the transactions at issue

were conducted at arm's length.  *Winstar Comm's*, 554 F.3d at 396-97; *see also In re Lopresti,*

2006 WL 2708605, at *6 (Bankr. D.N.J. Sept. 20, 2006).  Accordingly, the Third Circuit in *Winstar*

stated that the determination of insider status is "best characterized as a mixed question of law and

fact."  *Winstar Comm's*, 554 F.3d at 394-95 (where the Third Circuit was called upon to review a

creditor's status as a statutory and non-statutory insider) (internal citation omitted).   "In

determining the closeness of the relationship, courts have found the essential question is 'the

degree to which the transferee is able to exert control or influence over the debtor.'" *In re Hill,* 342 B.R. 183, 199 (Bankr. D.N.J. 2006) (quoting *In re Dupuis,* 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001)). Although actual control does not have to be shown to qualify as a non-statutory insider, *Winstar Comm's,* 554 F.3d at 396, there must be something more in the relationship than "the mere existence of a friendship." *Lopresti,* 2006 WL 2708605, at *7; s*ee also In re U.S. Medical,* 531 F.3d at 1278 ("[M]ore than mere closeness is necessary for a court to hold that a creditor was a non-statutory insider of a debtor."). Thus, as was the case in *Winstar,* it is possible that the Moving Defendants were not statutory insiders in "actual control" of the Debtor but were non-statutory insiders with the ability to conduct business with the Debtor on more favorable terms than arm's length.

With respect to non-statutory insider status, the allegations in the Complaint, taken as a whole, suggest a "closeness of the relationship" between and among the Debtor and the Moving Defendants, Holtham, Zeccardi and possibly Zeldin, that is less than "actual control" but also casts doubt as to whether the transactions were at arm's length and whether the closeness of the relationship between the Debtor and the Moving Defendants allowed the Moving Defendants to engage in transactions with the Debtor that improperly benefited them. As was stated by the Court in *AFI Holding,* the allegations of the Complaint must be sufficient to raise a question as to whether the relationship among the parties was "close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." *In re AFI Holding,* 530 F.3d at 849 (internal citations omitted). This Court finds that the Complaint's allegations are sufficient in this regard, as the Plan Administrator has alleged that the Moving Defendants were able to do business with and obtain payments from the Debtor on terms that were less than arm's-length and that he is unable to provide more specifics due to the incomplete nature of the Debtor's

books and records.[99]  Here, the alleged relationships between and among the Debtor,  DeMaio and

the Moving Defendants were certainly "close," and the Trustee has sufficiently alleged that the

payments made by the Debtor were on account of transactions that the Plan Administrator is unable

to more specifically describe because of the condition of the Debtor's books and records.

As a result, the factual record will need to be further developed before determining whether

Holtham, Zeccardi and/or Zeldin qualify as non-statutory insiders.[100]  For now at least, the Plan

Administrator has sufficiently alleged non-statutory insider status to warrant denial of the Moving

Defendants' Motions to Dismiss on this ground.[101]

     D. <u>The Plan Administrator Lacks Standing to Assert the Fraud and Negligent
Misrepresentation Claims and Has Failed to State a Claim for Those Counts</u>

This section will first discuss the elements of the causes of action for Negligent

Misrepresentation and Fraud and then apply the Third Circuit's standing criteria to the facts alleged

by the Plan Administrator in support of those claims.

     (i)    <u>The General Standards; Elements of the Causes of Action for Negligent
Misrepresentation and Fraud</u>

The Plan Administrator pleaded one Count for negligent misrepresentation (Count 1) and

one Count for common law fraud (Count 3).  Because the factual and legal predicates for these

claims and defenses are similar for each of these alleged causes of action, this Opinion addresses

them in a unified manner.  The Moving Defendants all argue that the Plan Administrator lacks

---

[99] *See*, Parts V.E and V.G, *infra*, for discussion of the effect of the incomplete and deficient status of the Debtor's books and records.

[100] As is noted elsewhere in this Opinion, the allegations with regard to Zeldin seem to be the weakest and least specific as to the alleged "closeness."

[101] The Court acknowledges that this finding may seem to be inconsistent with its prior rulings that the Individual Defendants did not owe fiduciary duties to the Debtor as a result of any alleged control and that they were not in "control" of the Debtor under the express statutory definition of control in 11 U.S.C. § 101(31)(B)(iii).  However, those determinations were made in the context of a controlling agreement -- the OA -- and a different statute -- the RULLCA -- that allowed members to exclude fiduciary duties between them and to specify who controls the entity. Further, by definition, and as construed by the *Winstar* case, non-statutory insider is not within the specifically-identified categories in 11 U.S.C. § 101(31)(B), and may be shown by a "close" relationship that is something less than actual control.

standing to assert the actual fraud and negligent misrepresentation claims and otherwise has failed to state a claim for those counts because they are based on representations made by DeMaio to other creditors, and those types of claims belong to the specific creditors to whom the misrepresentations were made, rather than to the Debtor generally.  As will be described in more detail below, this Court agrees.

(a) <u>Common law fraud</u> (Count 3)

To establish a claim for common-law fraud under New Jersey law, the plaintiff must show that a defendant made:

(1) a material misrepresentation or omission of a presently existing or past fact,
(2) with knowledge of the misrepresentation's falsity or the omission's materiality,
(3) intending the other party rely on it,
(4) reasonable reliance thereon, and
(5) damages as a result.

*See In re Dixon Ford*, 2011 WL 6749083, at *4 (Bankr. D.N.J. Dec. 21, 2011) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (1997)) (paragraphing added).  As explained below, the Plan Administrator directs this Count to Defendants' alleged dealings with Debtor's secured creditors, TMCC and First Bank (and certain unnamed others), and argues that Defendants' failure to correct DeMaio's misrepresentations or remove him from his position catalyzed the further transactions that underlie the Plan Administrator's avoidance claims and deepened the Debtor's insolvency.

(b) <u>Negligent misrepresentation</u> (Count 1)

Under New Jersey law, "[i]n order to sustain a cause of action based on negligent misrepresentation, the plaintiff must establish:

(i)     that the defendant negligently made an incorrect statement of a past or existing fact,
(ii)    that the plaintiff justifiably relied on it and
(iii)   that his reliance caused a loss or injury.

*Masone v. Levine*, 382 N.J. Super. 181, 187 (App. Div. 2005) (paragraphing added), *citing Kaufman v. i-Stat Corp.,* 165 N.J. 94, 109 (2000); *H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 334

(1983).  A negligent misrepresentation claim includes the same elements as a claim for fraudulent

misrepresentation, absent the scienter requirement.  *Kaufman*, 165 N.J. at 110.  "In particular, . . .

negligent misrepresentation requires a showing that defendant negligently provided false

information and that plaintiff incurred damages proximately caused by its reliance on that

information."  *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 351 (3d Cir. 2004) (citing

*Karu v. Feldman*, 119 N.J. 135, 146-47 (1990)).

Here, the Complaint alleges that DeMaio made misrepresentations to First Bank and to

TMCC (and possibly unnamed others) regarding Debtor's financial information; "caused the

Debtor to commit" to using the First Bank loan proceeds to buy out Holtham's membership

(though the Debtor immediately used the proceeds for other purposes); made misrepresentations

to TMCC about "the existence and status of certain collateral"; and signed the TMCC loan

documents.[102]  In sum, the conduct with which the Complaint charges the Moving Defendants

under the general claims of fraud or negligent misrepresentation appears to be failing to prevent

DeMaio's misrepresentations to other creditors or failing to tell them about DeMaio's wrongful

activities -- in other words, based on misrepresentations by another and/or omission.[103]

> (ii)    The Plan Administrator's Standing to Assert These Claims Under Third Circuit
> Law

After a bankruptcy petition is filed, "creditors lack standing to assert claims that are

'property of the estate.'"  *In re Emoral*, 740 F.3d 875, 879 (3d Cir.), *cert. denied*, 574 U.S. 974

(2014).  The estate is broadly defined as including "all legal or equitable interests of the debtor in

property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  This also includes causes

of action, which are considered property of the estate "if the claim existed at the commencement

---

[102] Compl. ¶¶ 144-49, 180, 183-84, 186, Dkt. No. 1.
[103] Compl. ¶¶ 182-83, 185, 187-94, Dkt. No. 1.

of the filing and the debtor could have asserted the claim on his own behalf under state law." *In re Emoral*, 740 F.3d at 879 (internal citation omitted).   "In order for a cause of action to be considered 'property of the estate,'

> the claim must be a "general one, with no particularized injury arising from it." On the other hand, if the claim is specific to the creditor, it is a "personal one and is a legal or equitable interest only of the creditor. A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.

*Id.*

A trustee can pursue a cause of action only if it is property of the estate and "inures to the benefit of all creditors." *Id.*  "This promotes the orderly distribution of assets, and comports with 'the fundamental bankruptcy policy of equitable distribution to all creditors that should not be undermined by an individual creditor's claim.'"  *Id.* (quoting *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987)).

Based on *In re Emoral* and other similar cases, the Individual Defendants argue that the Plan Administrator lacks standing to assert the negligent misrepresentation and fraud causes of action against them that are based on misrepresentations (or omissions) to specific creditors of the Debtor, i.e., TMCC, First Bank and undefined "others."[104]  This Court agrees.  Although TMCC and First Bank undoubtedly had claims against the Debtor and DeMaio, based on DeMaio's alleged misrepresentations, those claims were "specific" and "personal" to them as the misrepresentations were made to them.  These claims did not belong to the Debtor or anyone else. No one else was harmed by the misrepresentations, and no one else -- including the Plan Administrator -- has any "general" claims against the Debtor or the Individual Defendants based on DeMaio's misrepresentations to those specific creditors.  Any recovery on these claims would be for the benefit of TMCC and First Bank, not for the benefit of all creditors.  Thus, the Plan

---

[104] *See*, *e.g.* Compl. ¶¶ 138, 180-94, Dkt. No. 1.

Administrator lacks standing to pursue the fraud and negligent misrepresentation claims based on the statements made by DeMaio to TMCC, First Bank and unspecified others.

These claims fail for another similar reason; i.e., they are based on alleged misrepresentations made by someone else -- Mr. DeMaio. As noted above, to state a claim for fraud or negligent misrepresentation, the plaintiff must allege that the defendant made the misrepresentation. The Plan Administrator has not alleged that here, so the fraud and negligent misrepresentation claims are being dismissed on these grounds as well.

Perhaps recognizing these deficiencies, the Plan Administrator also argues that the Moving Defendants had a duty to speak based on their alleged status as fiduciaries to the Debtor. *See, e.g., Peruto v. Timbertech Ltd.*, 126 F. Supp. 3d 447, 457 (D.N.J. 2015) (under New Jersey law, "a negligent misrepresentation claim may also be based on an omission where plaintiff adequately pleads a duty to disclose"). However, the Court has already found that Defendants Holtham, Zeccardi, and Zeldin did not owe fiduciary duties to the Debtor. Thus, the Moving Defendants had no duty to speak or to correct any misrepresentations made by DeMaio. Accordingly, any claims based on this alleged failure to speak are being dismissed on this separate ground as well.

E.  <u>Standards for the Plan Administrator's Actual and Constructive Fraud Claims</u>

With respect generally to the Plan Administrator's avoidance claims under 11 U.S.C. §§ 544, 547 and 548, the Court will first address the general statutory standards applicable to these causes of action and then apply these standards to the facts alleged in the Complaint.[105]

(i)    <u>Actual and Constructive Fraud under 11 U.S.C. § 548(a)(1)(A) and (B)</u>

---

[105] 11 U.S.C. § 546 ("Limitations on avoiding powers") states in relevant part at subsection (a):

    (a)  An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--

        (1)  the later of—

            (A)  2 years after the entry of the order for relief; or

            (B)  1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A);

        (2)  the time the case is closed or dismissed.

(Counts 5, 7)

11 U.S.C. § 548 ("Fraudulent transfers and obligations") allows the Plan Administrator to avoid the transfer of an estate asset within two years before the petition date on the grounds of actual or constructive fraud.  11 U.S.C. § 548 states in relevant part at subsection (a)(1)(A) (actual fraud) and (B) (constructive fraud):

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)     (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; *or*

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11  U.S.C. § 548(a)(1)(A) and (B) (emphasis added).

(ii)     Actual and constructive fraud under 11 U.S.C. § 544(b) and N.J.S.A. § 25:2-25(a)(1), (a)(2) and 27 (Counts 6, 8)

Section 544 of the Bankruptcy Code ("Trustee as lien creditor and as successor to certain creditors and purchasers") additionally allows the Plan Administrator to avoid the transfer of an

estate asset on the grounds of actual or constructive fraud under applicable New Jersey statutes.

11 U.S.C. § 544 states in relevant part at subsection (b):

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

Trustees and Plan fiduciaries often bring claims under both 11 U.S.C. § 544(b)(1) under appropriate state (or other) law and 11 U.S.C. § 548(a)(1)(A) and (B), because the applicable state statutes allow the avoidance of transfers for longer periods. That is the case here where New Jersey's UFTA (in certain instances) allows the avoidance of transfers made up to four (4) years prepetition (as cited below) rather than up to only two (2) years allowed under 11 U.S.C. § 548(a)(1)(A) and (B).[106]

The first applicable section under UFTA is N.J.S.A. § 25:2-25 ("Transfers fraudulent as to present or future creditors"), which establishes the causes of action for actual and constructive fraud at subsections a(1) and a(2), respectively, with respect to present or future creditors:

> N.J.S.A. § 25:2-25.
>
> a. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or

---

[106] Here, the Court notes that in Counts 6 and 8 of the Complaint, the Plan Administrator inadvertently cited New Jersey Uniform Voidable Transfer Act, N.J.S.A. § 25:2-20 *et seq.* ("UVTA"), which replaced the Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 *et seq.* ("UFTA"), for transfers that occurred on or after the August 10, 2021 effective date of the new statute. There is no dispute that the UFTA was in effect on the October 27, 2019 petition date and earlier, when the targeted transfers occurred. Both Holtham and Zeccardi note the Plan Administrator's error and appear to have no *per se* objection to his correcting his claim to cite the applicable version of the statute but argue that the Plan Administrator has not stated a claim even under the applicable version of the statute. Holtham Br., at 28-30, Dkt. No. 14-1; Zeccardi Br., at 22-26, Dkt. No. 22-1. The Court will accordingly analyze these claims under the UFTA.

obligation, and the debtor:

(a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(b) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

The second applicable section under UFTA is N.J.S.A. § 25:2-27 ("Transfers fraudulent as to present creditors"), which establishes the causes of action for actual and constructive fraud at subsections a. and b., respectively, with respect to present creditors (and includes subsection (b) directed to insiders):

N.J.S.A. § 25:2-27.

a. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

b. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.J.S.A. § 25:2-31 ("Extinguishment of cause of action") fixes the statutes of limitations for both N.J.S.A. § 25:2-25 and N.J..A. § 25:2-27 and states in full:

A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:

a. Under subsection a. of R.S.25:2-25, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was discovered by the claimant.

b. Under subsection b. of R.S.25:2-25 or subsection a. of R.S.25:2-27, within four years after the transfer was made or the obligation was incurred; or

c. Under subsection b. of R.S.25:2-27 [transfer to insider], within one year after the transfer was made or the obligation was incurred.

N.J.S.A. § 25:2-26 ("Factors in determining fraudulent intent") sets forth a list of non-exclusive criteria for establishing fraudulent intent under N.J.S.A. § 25:2-25a (the "badges of fraud") and states in full:

In determining actual intent under subsection a. of R.S. 25:2-25 consideration may be given, among other factors, to whether:

a. The transfer or obligation was to an insider;
b. The debtor retained possession or control of the property transferred after the transfer;
c. The transfer or obligation was disclosed or concealed;
d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
e. The transfer was of substantially all the debtor's assets;
f. The debtor absconded;
g. The debtor removed or concealed assets;
h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

The Complaint at Counts 5, 6, 7, 8, 9 also seeks to preserve the avoided transfers for the benefit of the estate under 11 U.S.C. §§ 550 and 551.[107]

The fraudulent transfer analysis is substantially similar-- if not identical -- under federal and state law. *Kartzman v. Latoc, Inc.* (*In re The Mall at the Galaxy, Inc.*), 2022 WL 1299088 at *13 (Bankr. D.N.J. Apr. 29, 2022), *aff'd*, 2023 WL 2966785 (D.N.J. Apr. 17, 2023), *appeal filed*, Dkt. No. 23-1906 (and cases cited therein) ("As the language in the federal and state statutes is nearly identical, the Third Circuit has noted that fraudulent transfer claims under federal and state

---

[107] Compl. ¶¶ 233, 245, 255, 265, 280, Dkt. No. 1.

bankruptcy laws require almost identical analysis.").  Accordingly, the Court will refer to both New Jersey and federal cases in analyzing these claims.

      (iii)    <u>The Actual Fraudulent Transfer Claims</u> (Counts 5, 6)

      "Ordinarily, a party asserting an intentional fraudulent conveyance claim must include allegations concerning the following aspects of the transfer (1) the property subject to it, (2) its timing and frequency, and (3) the consideration paid in exchange." *In re Old CarCo LLC*, 435 B.R. 169, 191-92 (Bankr. S.D.N.Y. 2010).  Under Count 5, which alleges actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A), and Count 6, which alleges actual fraudulent transfers under 11 U.S.C. § 544(b) and N.J.S.A. § 25:2-25(a)(1), the Plan Administrator argues that the Complaint adequately pleads that the Moving Defendants -- as alleged insiders of the Debtor -- engaged in various schemes and transactions to benefit themselves at the expense of the Debtor and other creditors.  The Plan Administrator argues that the Defendants received over $18.6 million from the Debtor during this period through hundreds of transactions, that the Debtor's books and records do not accurately or completely reflect the consideration for the transfers and that the Defendants concealed evidence of such transfers.[108]  The Plan Administrator provides printouts of payments from bank statements and/or payment ledgers in Exhibits A-D of the Complaint, showing two-year, four-year, one-year and post-petition transfers, which include pertinent details, to the extent available, such as the payee,  check number, check date, amount and bank account number.[109]  The Plan Administrator also notes that these transfers are to the Moving Defendants or their related entities and were often made with no stated or discernable purpose, based on the Debtor's books and records.  Thus, the Plan Administrator has easily satisfied the requirements that he identify the property subject to his claims and the frequency and timing of

---

[108] Plan Admin. Obj.,  at 46, Dkt. No. 34.
[109] Compl., Exs. A-D, Dkt. No. 1.

the transfers.  Before turning to the third requirement -- the consideration paid in exchange -- the Court will address the "actual fraud" analyses in fraudulent transfer cases and the "badges of fraud."

The New Jersey Supreme Court in *Gilchinsky v. National Westminster Bank, N.A.*, 159 N.J. 463, 475 (1999) described the actual fraud analysis under NJUFTA, which (as noted) is essentially the same as the actual fraud analysis under 11 U.S.C. § 548(a)(1):

> In determining whether a transfer constitutes a fraudulent conveyance, there are two relevant inquiries. The first is "whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them" at some point in time "but for the conveyance." . . . The second is whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor. Transfers calculated to hinder, delay, or defeat collection of a known debt are deemed fraudulent because of the debtor's intent to withdraw the assets from the reach of process.

*Gilchinsky*, 159 N.J. at 475-76 (internal citations omitted).  As the *Gilchinsky* Court properly determined, it is the transferor's intent, and not the transferee's, that is relevant and that must be pleaded to state a claim for an actual fraudulent transfer.  *See also In re Elrod Holding Corp.*, 421 B.R. 700, 709 (Bankr D. Del. 2010).  Thus, notwithstanding Holtham's arguments to the contrary, Holtham's intent in entering into the transactions is not necessary to state this cause of action (although his intent may become a relevant factor as the case progresses).  Accordingly, his Motion to Dismiss on this ground is denied.

Turning to the Debtor's (or really DeMaio's intent) there is no question that the transfers by the Debtor to the Moving Defendants put those assets beyond the reach of creditors.  Thus, the Court's analysis focuses on the second factor; i.e., whether the transfers were made by the Debtor with intent to hinder, delay or defraud creditors.  In this regard, the *Gilchinsky* Court stated as follows (while noting that there is rarely any direct evidence of fraudulent intent):

In determining whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart or evade creditors, courts generally look to factors commonly referred to as "badges of fraud." "Badges of fraud" represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent. . . .  As one court has stated, "badges of fraud"

> are said to be facts which throw suspicion on a transaction, and which call for an explanation. . . . More simply stated, they are signs or marks of fraud. They do not of themselves or per se constitute fraud, but they are facts having a tendency to show the existence of fraud [. . . .] *Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent. . . ."* . . .

The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single factor, *i.e.* badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud. . . .

> "[F]raudulent intent, by its very nature, is rarely susceptible to direct proof. . . ." . . . A defendant rarely will acknowledge that she transferred funds to place them beyond the reach of creditors. Actual intent often must be established through inferential reasoning, deduced from the circumstances surrounding the allegedly fraudulent act.

*Gilchinsky,* 159 N.J. at 476-78 (emphases in original) (internal citations omitted).  As noted, the actual fraudulent transfer analysis is essentially the same under New Jersey and federal law.

The Court finds that the Plan Administrator's claims for actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) and the UFTA survive the Motions to Dismiss (where the Plan Administrator's claims for common law fraud and negligent misrepresentation do not) because these statutory causes of action do not depend on a false statement from defendant to plaintiff. Instead, these claims may be demonstrated by other badges of fraud.  The Plan Administrator alleges that Defendants' conduct evinces the following badges of fraud under N.J.S.A. § 25:2-26:

> a. the relationship between the Debtor and the Moving Defendants, who were owners of the Debtor and individuals or entities with which the Debtor did substantial business and whom the Plan Administrator characterizes as insiders;
> b. Defendant Zeccardi's removal of cars from the dealership without authorization;

48

c.  the Moving Defendants' receipt of over $18.6 million from the Debtor during a period of financial distress;

d.  the Debtor's insolvency at the time of the transfers; and

e.  the Plan Administrator's evidence of "concealment" in Debtors books and records, which were incomplete at best.[110]

More specifically, but not by way of limitation, the Complaint alleges that, in early October 2019, Zeccardi began "secretly" removing from Debtor's premises vehicles totaling more than $2 million.[111]  The Complaint also alleges that a TMCC audit of October 2019 and later investigation disclosed that Concours was delivering to Debtor vehicles without titles but demanding payment for them.[112]  The Plan Administrator alleges that, while the Debtor was insolvent, the Moving Defendants (or their affiliates) received payments from the Debtor in hundreds of transactions totaling $18.6 million and that the purpose or nature of these transactions is not readily discernable from the Debtor's books and records.

In his Objection, though not so plainly in the Complaint, the Plan Administrator also recites general examples of inadequately-documented transactions in Debtor's books and records that support the alleged badges of fraud:

> For example, the Debtor's accounting records show millions of dollars in transfers to the Moving Defendants with no stated purpose. Other transfers appear to be payments for personal, non-business expenses. Yet other transfers appear to be payments to one person for services provided by another, for example, a payment to Zeccardi marked "Carmine DeMaio payroll," or some similar notation. Finally, many of the transfers are described only by incomprehensible abbreviated descriptions or what appear to be acronyms. . . . The lack of detailed descriptions in the Complaint does not prejudice the Moving Defendants in any way, because they have the information in their possession related to the millions of dollars they received.[113]

These allegations also go to the third requirements of the *Old CarCo* case – a showing as to the consideration paid in exchange for the challenged transfer.  Here, the Plan Administrator is

---

[110] Compl. ¶¶ 113, 154, 270, Dkt. No. 1; Plan Admin. Obj.,  at 46, Dkt. No. 34.

[111] Compl. ¶¶ 154-56, Dkt. No. 1.

[112] Compl. ¶ 102, Dkt. No. 1.  The Plan Administrator uses similar language at Compl. ¶ 209, Dkt. No. 1.

[113] Plan Admin. Obj., at 46, n.33, Dkt, No. 34.

alleging that the Debtor's books and records often do not reveal the purpose of a particular transfer or the consideration given in exchange.   And, where some detail is provided, the Plan Administrator is asserting that the Debtor's books and records appear to show that the transfers were for non-business purposes or payments made to one person or entity for services rendered by another.   Thus, the Plan Administrator is asserting that:  (i) the Debtor's books and records do not show generally the consideration given in exchange for the transfers or demonstrate a proper purpose; and (ii) the Defendants, as counterparties to these transactions, will (or should) have complete or at least better knowledge as to the underlying nature and purpose of the challenged transactions.

Taken together, these allegations, as limited by the incomplete and/or unreliable nature of the Debtor's books and records, are sufficient to state a claim for actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) and the NJUFTA.   The various business relationships between and among the Debtor, the Moving Defendants and their affiliates, the Moving Defendants' ownership interests in the Debtor, the number and amount of transactions between them, the Debtor's alleged insolvency when the transfers were made, and the incomplete and potentially misleading nature of the Debtor's books and records are sufficient "badges of fraud" to give rise to an inference that the transactions between and among them may have been made by the Debtor with the intent to hinder, delay or defraud creditors, at least at this stage.   Here, the Plan Administrator is correct in arguing that a more liberal pleading standard should be applied because he was not involved in the challenged transactions.   In sharp contrast, the Moving Defendants were unquestionably involved in the challenged transactions and should have knowledge and documentation evidencing the nature of the claims against them and their defenses to those claims.

In sum, the Complaint puts the Moving Defendants on sufficient notice of the actual fraudulent transfer claims against them.   Since they are counterparties to the specifically

challenged transactions, they will (or should) have more knowledge than the Plan Administrator about these claims and their defenses to them.  Thus, giving all reasonable inferences in favor of the Plan Administrator and accepting his pleadings as true, the Plan Administrator has sufficiently stated claims for actual fraudulent transfers, especially based on the more liberal pleading standard applicable to the Plan Administrator here.  As a result, the Motions to Dismiss on this basis are denied.

(iv)    The Constructive Fraudulent Transfer Claims (Counts 7, 8)

Under Counts 7 and 8 for constructive fraudulent transfers, the Moving Defendants argue that the Plan Administrator failed to adequately plead the Debtor's insolvency or the value received by the Debtor in exchange for the transfers, asserting that the Plan Administrator's allegations are conclusory and do no more than recite the statutory standards.  The Plan Administrator, in response, argues that DeMaio admitted the Debtor's insolvency from its inception in the District Court Action and that the Complaint as a whole describes the "systemic looting of the Debtor's assets . . . which, when coupled with the incompleteness of the Debtor's books and records and that sheer volume of transfers alleged . . . states plausible claims for constructive fraudulent transfer."[114]  In other words, the allegations of this Complaint, as well as the circumstances surrounding the Debtor's transactions with the Moving Defendants, including the issues with the Debtor's books and records, and the Moving Defendants' knowledge as to their business dealings with the Debtor are also enough to put them on notice of the constructive fraudulent transfer claims against them.  The Court will address these issues in order.

(a)  Insolvency

---

[114] Plan Admin. Obj.,  at 47, Dkt. No. 34.

The Plan Administrator alleges that the Debtor was insolvent from its formation in 2016 through the Petition Date.[115]  Though not stated in great detail, the Plan Administrator argues that the Debtor admitted its insolvency during the relevant time periods in pleadings filed in the District Court in the TMCC Action.  This Court is familiar with those pleadings due to its involvement with another motion to dismiss an adversary proceeding in this case (*Forman v. Unanue*, Adv. Pro. No. 21-1449 (VFP)) that was based in part on a similar argument, i.e., that the Plan Administrator had not adequately pleaded insolvency.

The Court rejected that argument then and will reject it again now for the same reasons.[116] In fact, in that District Court Action,  DeMaio described the Debtor's "hopeless" insolvency since its inception in considerable detail.[117]  That admission by the Operating Manager of the Debtor certainly satisfies the relatively minimal pleading standard applicable on these Motions to Dismiss. Accordingly, the Court finds that insolvency of the Debtor has been sufficiently pleaded.

(b) Reasonably Equivalent Value

As with the actual fraudulent transfer claims, the Moving Defendants argue that the Plan Administrator has failed to sufficiently allege that the Debtor did not receive reasonably equivalent value for the transfers being challenged as constructively fraudulent.  Here, the Trustee essentially acknowledges the lack of specific detail regarding this aspect of his claim, blaming "the incompleteness of the Debtor's books and records."[118]  However, and as previously noted, the Plan Administrator also cites to the volume of the transfers to the Moving Defendants -- $18.6 million in total -- and "the systemic looting of the Debtor's assets," which includes (among other things)

---

[115] Compl. ¶¶ 228, 238, 249, 260, 274, Dkt. No. 1.

[116] Nov. 15, 2022 Hr'g Tr. 8:17-9:13; 9:22-10:1; 11:10-16, 12:6-9; 20:7-21:5;  21:13-23:18, Dkt. No. 30, *Forman v. Unanue*, Adv. Pro. No. 21-1449 (VFP).

[117] Apr. 19, 2021 DeMaio Answer and  Countercl. ¶¶ 18-20, Dkt. No. 164, D.N.J. Case No. 2:19-cv-19092-CCC-ESK.

[118] Plan Admin. Obj., at 47, Dkt. No. 34.  For example, the Plan Administrator stated in his Objection that the books and records evinced elements of lack of documentation, discrepancies and missing information, manipulation and obfuscation and concealment, incompleteness, and often no evidence of value being exchanged.  Plan Admin. Obj., at 13, 41, 49, Dkt. No. 34.

the allegations as to the vehicles being unilaterally removed from the Debtor's premises. Additionally, the Plan Administrator asserts that there is no stated or discernable purpose for the hundreds of other transactions with the Moving Defendant identified in the Exhibits to the Complaint, totaling over $18 million.

In analyzing the Plan Administrator's claims and the Moving Defendants' assertions that the reasonably equivalent value element is conclusory and not sufficiently pleaded, the Court finds that the Plan Administrator has satisfied his pleading burden, but not by a wide margin. As before, this finding is based in part on the relaxed Rule 9(b) pleading standard applicable when a Trustee (or Plan Administrator) is the plaintiff and does not have personal knowledge of the underlying facts. The Court is also swayed by the Plan Administrator's argument that, in contrast to his limited knowledge, the Moving Defendants *do* (or at least should) have actual knowledge of the facts underlying the challenged transactions. If those transactions were made for reasonably equivalent value, the Moving Defendants should be able to show that relatively easily through their own books and records and personal knowledge. But the Plan Administrator should similarly be given an opportunity (through discovery) to prove that they were not.

The Court is convinced at this stage that the Plan Administrator provided the most complete information he has available as to the value (or lack of value) received in exchange for the challenged transfers. This determination is also based on the knowledge and information the Moving Defendants will or should have as to the underlying transactions and the value they provided for them. Discovery is necessary and appropriate to determine whether the Plan Administrator's claims that the Debtor did not receive reasonably equivalent value for the millions of dollars of transfers it made to the Moving Defendants, who were also owners of the Debtor, through hundreds of separate transactions and transfers, many of which were not properly or accurately documented in the Debtor's books and records. To hold otherwise would put the Plan

Administrator in the untenable and unfair position of having to show the precise consideration given by the Debtor for the challenged transfers when the Debtor's books and records do not allow him to do so.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (the particularity required may be relaxed where (as is the case here) "the factual information is peculiarly within the defendant's knowledge or control.").

In sum, the Moving Defendants are sufficiently on notice of the Trustee's constructive fraudulent transfer claims to defend against them, particularly because they were parties to those transactions, because the relaxed pleading standard applies to the Plan Administrator and because the Debtor's books and records are not complete or accurate.  Accordingly, the Motions to Dismiss on this ground are denied.

F.  <u>The Effect of the Settlement Agreement Between and Among the Plan Administrator, Zeccardi and Concours on the Plan Administrator's Preference Claims Must Await Further Discovery</u>

The Zeccardi Parties argue that  (i) all the Plan Administrator's preference clams against Zeccardi LLC, and (ii) those against Concours that are based on the standard non-insider 90-day preference period are barred and released by a settlement agreement between the Plan Administrator, Zeccardi and Concours (the "Zeccardi Settlement Agreement").  The Zeccardi Parties also argue that the Claims against Zeccardi LLC are barred by the Plan and Disclosure Statement.

In response to the first argument, the Plan Administrator asserts that Zeccardi LLC was not party to the Zeccardi Settlement Agreement and therefore not released by it.  Though they do not dispute that Zeccardi LLC was not party to the Zeccardi Settlement Agreement, the Zeccardi Parties counter by noting that the transfers listed in the Plan and Disclosure Statement as being made to Zeccardi include all the transfers made to Zeccardi LLC.  The Court does not have a copy of the Zeccardi Settlement Agreement or any ability to confirm that all the transfers listed on Plan

Exhibit A to Zeccardi include all the transfers to Zeccardi LLC; therefore, its ability to analyze that Agreement is limited (at best).  However, if it is true that the transfers to Zeccardi LLC are included in the listed transfers to Zeccardi, individually, it may be that the intent of the parties was to release those preference claims as to Zeccardi LLC, just as they were released as to Zeccardi individually.  If, however, there are transfers to Zeccardi LLC that were not included in that list, it is at least unclear whether those unlisted claims were released or intended to be released.  Indeed, in a footnote, the Plan Administrator asserts that the existence of Zeccardi LLC was never disclosed to the Plan Administrator or the Committee and that Zeccardi may have received hundreds of thousands of dollars from the Debtor through Zeccardi LLC.[119]

The incomplete record as to the Zeccardi Settlement Agreement, the related uncertainty regarding the nature and extent of the transfers to Zeccardi LLC and the fact that Zeccardi LLC was not party to the Settlement Agreement all demonstrate that dismissal of the claims against Zeccardi LLC is inappropriate at this time.  Instead, this incomplete record highlights the need in the first instance to determine whether all the transfers to Zeccardi LLC were listed as transfers to Zeccardi in Plan Exhibit A.  The Court will then need to understand what the Zeccardi Settlement Agreement actually says and determine whether the settlement was intended to include the transfers to Zeccardi LLC.   The Court cannot make any of those fact-sensitive determinations based on the record before it, particularly not on a Motion to Dismiss.

As to the Zeccardi Parties' argument that the alleged preference claims relating to Zeccardi LLC should be dismissed because they were not disclosed in the Plan and Disclosure Statement, that argument is rejected for the same reasons stated in Point V.G., *infra*, and because this argument is at least inconsistent with the Zeccardi Parties' assertion that the transfers to Zeccardi LLC were part of the released claims <u>because</u> they were listed as transfers to Zeccardi individually.  If the

---

[119] Plan Admin. Br, at 37 n.27, Dkt. No. 34.

listed transfers to Zeccardi were in fact made to Zeccardi LLC, and the Zeccardi Parties failed to disclose that fact to the Plan Administrator and Committee in the settlement negotiations, as is alleged, it would be at least inequitable to apply an equitable principle such as judicial or equitable estoppel and/or to require the Plan Administrator and Committee to disclose and release claims of which it was not aware.

For all these reasons, the Zeccardi Parties' Motion to Dismiss the preference claims against Zeccardi LLC based on the Zeccardi Settlement Agreement is denied, without prejudice to further fact-finding as to whether all the transfers to Zeccardi LLC were included as transfers to Zeccardi, individually, in Exhibit A to the Combined Disclosure Statement and Plan and the other issues described above.  The 90-day preference claims against Concours will be dismissed (or should be omitted from any Amended Complaint), as the Plan Administrator acknowledges that these claims were part of the Settlement Agreement.[120]  However, as the Plan Administrator also argues and the Zeccardi Parties do not contest, the remaining claims against the Zeccardi Parties not subject to the Zeccardi Settlement Agreement (and not otherwise dismissed by this ruling) remain in full force and effect.  For clarity, and not by way of limitation, the prior sentence applies to all fraudulent transfer, preference and unjust enrichment claims (Counts 5, 6, 7, 8, 9 and 11) against the Zeccardi Parties.[121]

G.    Preference/Insider Preference under 11 U.S.C. § 547(b)

The Plan Administrator seeks to recover the following aggregate amounts from five (5) of the Moving Defendants on the grounds that these payments constitute preferential transfers "to or

---

[120] The Plan Administrator states in his objection that he inadvertently included in Count 9 (preference) transfers made to Concours within ninety (90) days of the October 27, 2019 petition date and that he will voluntarily dismiss his preference action as to these transfers but will not dismiss any other claims (such as fraudulent transfer or unjust enrichment) as to these transfers.  Plan Admin. Obj., at 43, Dkt. No. 34.

[121] As to the Zeccardi Parties' arguments that none of them are statutory or non-statutory insiders, those arguments are addressed in Part V.C, *supra*, and the Motion to Dismiss on these grounds is also denied without prejudice for the same reasons at this time.

for the benefit of creditors" who are insiders made within one (1) year of the bankruptcy petition

under 11 U.S.C. § 547(b)(4)(B).[122]

| Transferee | One-year |
|---|---|
| Holtham | $   120,000.00 |
| Leonard Automotive (Toyota of Hackensack) | $1,010,345.18 |
| Zeccardi | $              0.00 |
| Concours | $6,500,670.60 |
| Zeccardi LLC | $   120,000.00 |
| Zeldin | $     63,000.00 |

The cause of action for the avoidance of preferential transactions is set forth at 11 U.S.C. § 547(b)

(with § 547(b)(4)(B) applicable to a claim for insider preference):

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  11 U.S.C. § 547(f) affords the Plan Administrator the presumption that the

Debtor was "insolvent on and during the 90 days immediately preceding the date of the filing of

---

[122] Compl., One-year Transfers, Ex. C, Dkt. No. 1.  If the Court ultimately determines that any of these Defendants is not an insider, the preference claims outside the ninety (90) day period would fail to state a claim.

the petition" but does not extend that presumption to the period one year prepetition.  11 U.S.C. §

547(i) also controls recoveries for insider preference:

> (i)    If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor *to an entity that is not an insider for the benefit of a creditor that is an insider*, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

11 U.S.C. § 547(i) (emphasis supplied).  11 U.S.C. § 547(c), in nine (9) subsections, sets forth the

defenses to a preference claim.  Subsections 547(c)(1), (2) and (4) set forth the ordinary course

and new value defenses.

The plaintiff must prove each element of the preference claim by preponderance of the

evidence.  *In re R.M.L., Inc.*, 195 B.R. 602, 611 (Bankr. M.D. Pa. 1996).  If the plaintiff makes his

*prima facie* case to avoid a transfer as a preference, then the defendant "has the burden of proving

that the transfer is excepted from the preference rule."  *In re Fonda Grp., Inc.*, 108 B.R. 956, 958

(Bankr. D.N.J. 1989).  11 U.S.C. § 547(g) codifies those burdens:

> (g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547(g).

In this case, the Moving Defendants argue that the Plan Administrator has failed to

establish a *prima facie* claim for preference against any of them in Count 9 of his Complaint,

principally because they are not insiders.  The Moving Defendants therefore address their statutory

defenses in a limited way (in the case of Zeccardi) or not at all (in the case of Holtham and Zeldin).

In response, the Plan Administrator argues that the Moving Defendants' insider status is a

factual question that is not appropriately resolved on a motion to dismiss and that the transfers to

Leonard Automotive were for the benefit of Holtham and those to Concours and Zeccardi LLC for

the benefit of Zeccardi, as those individuals controlled those respective entities. The Plan Administrator's allegation that Leonard Automotive, Concours and Zeccardi LLC are entities controlled by Holtham and Zeccardi is not challenged on these Motions (as any such challenge would require resolution of factual issues not appropriate on a motion to dismiss). Thus, the Plan Administrator has sufficiently alleged that the challenged transfers to Leonard Automotive, Concours and Zeccardi LLC were ultimately to or for the benefit of their respective principals, Holtham and Zeccardi. Further, and as noted above, this Court agrees that the status of the Moving Defendants as non-statutory insiders is a factual question that cannot be resolved at this time. *See* Part V.C(iii).[123]

Additionally, to the extent the Moving Defendants argue that the Plan Administrator has not made out a *prima facie* case because the antecedent debt and creditor status are not sufficiently pleaded, the Plan Administrator has asserted that he is unable to determine the underlying nature of the challenged transactions because of the incomplete and inaccurate condition of the Debtor's books and records. As with the fraudulent transfer claims, the Court finds that the Plan Administrator has sufficiently pleaded the preference claims, once again based in part on the lesser pleading burdens assigned to the Plan Administrator and the Moving Defendants' knowledge as to the challenged transactions. Accordingly, the Motions to Dismiss the preference claims are denied at this time. At a minimum, discovery is needed to determine whether the Moving Defendants are non-statutory insiders and as to the nature of the underlying transactions.

H. The Plan and Disclosure Statement Adequately Described the Plan Administrator's Potential Claims

Relying principally on *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 415-17, 419-20 (3d Cir.), *cert. denied*, 488 U.S. 967 (1988), the Zeccardi Parties argue that certain

---

[123] The Court notes that the claims of insider status (and control) seem to be the weakest against Zeldin, who had the smallest ownership interest and appears to have had the least involvement with the Debtor.

Counts (1, 5, 6, 7, 8, 9, 11) should be dismissed (or reduced as to dollar demand) because they were not sufficiently or adequately disclosed in the Third Amended Combined Disclosure Statement and Plan.[124]  The Court disagrees on the facts and law.

On the facts, there were extensive disclosures about the Debtor's potential claims against the Moving Defendants and others.  It was obvious to this Court and all parties in interest that the Plan Administrator intended to pursue claims against Zeccardi and other parties who were alleged to have improperly received funds or other property from the Debtor.  For example, Exhibit A to the Plan disclosed and expressly preserved many of the claims brought in this adversary proceeding and reserved the right to bring other related claims.  Portions of that Exhibit A are quoted below as they pertain to the Moving Defendants.[125]

Exhibit A to the confirmed Third Amended Combined Disclosure Statement and Plan consists of five single-spaced pages titled "Causes of Action include the following."  A footnote to the title says that capitalized terms are defined in the Plan.  As related to the Moving Defendants, Exhibit A states:

Causes of Action include the following:

- Claims or causes of action against present or former officers, directors, members or managers of the Debtor, including but not limited to Carmine A. DeMaio III, Frank C. Holtham, Jr., Carmine Zeccardi, Jr., and Dmitry Zeldin, which are not otherwise released under the Plan, including, but not limited to, unreleased claims or causes of action

    (i) arising under federal bankruptcy law, including Chapter 5 of the Bankruptcy Code, or applicable state fraudulent conveyance laws on account of any transfers to or for the benefit of such persons, or payments of debts owed to such persons, prior to or after the Petition Date;

---

[124] On the basis that these claims were inadequately disclosed in Exhibit A to the Third Amended Combined Disclosure Statement and Plan, the Zeccardi Parties argue that the Court should dismiss Counts 1 as to Zeccardi (negligent misrepresentation); Counts 4, 6, 7, 8 as to Zeccardi and Zeccardi LLC (all fraudulent transfer claims to the extent the amount demanded in the Complaint was higher than that included on Exhibit A to the Third Amended Combined Disclosure Statement and Plan) and 11 in part as to Concours (unjust enrichment).  Zeccardi Br., at 8-9, 24-25, 27-28, 34-35, Dkt. No. 22-1; Nov. 24, 2020 Conf. Order, Plan, Ex. A, Causes of Action, at 2-5, Ex. A, Main Dkt. No. 570.
[125] Nov. 24, 2020 Conf. Order, Plan, Ex. A,, Causes of Action, Ex. A, Main Dkt. No. 570.

(ii) arising under federal bankruptcy law, including Chapter 5 of the Bankruptcy Code, or applicable state preferential transfer laws on account of any transfers to or for the benefit of such persons, or payments of debts owed to such persons;

(iii) for conversion, unjust enrichment, or under other equitable principles on account of transfers of the Debtor's property to such persons;

(iv) arising under applicable common law for fraud, for breaches of contractual obligations or fiduciary duties owed to the Debtor, or for aiding and abetting any of the foregoing, in connection with the management of the Debtor (including specifically, without limitation, in connection with the valuation of any Debtor's inventory and/or any vehicles sold out of trust);

(v) arising under applicable federal or state laws, including but not limited to section 510(c) of the Bankruptcy Code, for the subordination of any Claims asserted by such persons against the Estate; and

(vi) arising under applicable state laws on account of any wrongful dividends paid by the Debtor, or for aiding and abetting any of the foregoing; and . . .

- Claims or causes of action under Chapter 5 of the Bankruptcy Code, including but not limited to those related to all transfers listed on the Debtor's Schedules and/or Statement of Financial Affairs filed in the Chapter 11 Case and/or all transfers made to the following persons or entities—[126]

Exhibit A ended with a four-column table that included the following amounts for Zeccardi Parties:

| Creditor | Dates | Amount | Reasons for Payment or Transfer |
|----------|-------|--------|--------------------------------|
| Concours | Various | $5,921,743.00 | Insider |
| Carmine Zeccardi | Various | $  132,000.00 | Insider - Payroll |

The entire column labeled "Amount" carried the footnote:  "The value of the claims is only estimated at this time, and may be higher or lower."[127]

And while it is true that the Third Amended Combined Disclosure Statement and Plan and Exhibit A also included specific dollar figures, the Exhibit also made clear that these numbers were the Plan Administrator's estimates based on the information then available.  That the numbers

---

[126] Nov. 24, 2020 Conf. Order, Plan, Ex. A, Causes of Action, at 1, Ex. A, Main Dkt. No. 570.
[127] Nov. 24, 2020 Conf. Order, Plan, Ex. A, Causes of Action, at 2, Ex. A, Main Dkt. No. 570.

in the Adversary Complaint turned out to be higher (or lower) than previously stated is of no moment and was disclosed in any event.  The Zeccardi Parties (and the other Moving Defendants) were undeniably on notice of the general nature of the claims that may be made against them. Perfect notice is not required.

Similarly, the argument that Zeccardi LLC was not specifically identified when  Zeccardi and another of his entities -- Concours -- was, does not mean that the Plan Administrator forever waived those claims, particularly when the Plan Administrator asserts that the transfers to Zeccardi LLC were not discussed during settlement negotiations relating to Zeccardi individually and Concours.  The intentionally non-exclusive language of Exhibit A cited above is to the contrary, and so is the law.  In this regard, the Court finds that the *Oneida Motor Freight* case, 848 F.2d  at 415-17, 419-20, that is almost exclusively relied upon by the Zeccardi Parties for this argument is easily distinguishable.

In *Oneida*, the debtor failed to disclose *any* claims against its lender in a series of four (4) cash collateral orders entered during the bankruptcy case that acknowledged the extent, validity and priority of the lender's lien, nor were any such claims described in the debtor's Plan and Disclosure Statement.  *Oneida*, 848 F.2d at 419.  Only <u>after</u> the Plan was confirmed did the debtor assert a multimillion dollar lender liability claim against its bank.  *Oneida*, 848 F.2d at 419.  That is a far cry from what happened here, where there was extensive, detailed pre-confirmation disclosure about potential claims against the Zeccardi Parties and others.  Those disclosures did not have to be exact or perfect.  They just had to give reasonable notice of the general nature and value of the potential claims.  There was no failure to disclose here.  In fact, the opposite is true, as the Committee and Plan Administrator attempted to list as completely and inclusively as they could the potential claims of the estate against the Moving Defendants and others.   Those

disclosures were not necessarily completely exhaustive or limiting, particularly given the incomplete state of the Debtor's books and records, and Plan Exhibit A so states.

Later cases demonstrate the limits of *Oneida*'s applicability in situations where there was a least some disclosure of the potential claims and/or no indication of any intentional concealment or withholding of the claim (as was the case in *Oneida*). *See, e.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 357, 363-64 (3d Cir. 1996) (Chapter 11). In *Ryan Operations*, the debtor-homebuilder did not schedule either (as an asset) its potential claims against a manufacturer of defective wood trim or (as a liability) its potential liability to customers for using the defective product. However, two months after its filing, the debtor obtained an Order allowing debtor to retain counsel to pursue or defend claims against contractors or suppliers. In reversing the District Court's dismissal of debtor's claims against the manufacturer on estoppel grounds, the Third Circuit determined that debtor was not judicially estopped from suing the manufacturer (even though debtor's failure to schedule the claim as an asset violated 11 U.S.C. § 521(1)). The Court found that, because there was no inference of "deliberate manipulation" as in *Oneida* or any change in the Plan, *Oneida* simply did not apply. *Ryan Operations*, 81 F.3d at 363. *See also In re Insys Therapeutics, Inc.*, 2021 WL 3083325, at *2 n.7 (Bankr. D. Del. July 21, 2021) (Chapter 11) (entry of a critical vendor Order in favor of a creditor did not preclude liquidation trustee's filing an avoidance claim against the creditor, where the disclosure statement estimated $30 million in potential avoidance actions and stated that the debtor was still investigating); *In re Kane*, 628 F.3d 631, 640 n.4 (3d Cir. 2010) (Chapter 13) (failure of estranged spouse to schedule her equitable distribution claim on her own Chapter 7 petition (her Trustee was ultimately satisfied with her disclosure) did not estop her from pursuing a proof of claim for equitable distribution against debtor in his subsequent Chapter 13 petition; the Court found no intentional concealment).

In sum, judicial and equitable estoppel do not apply to the claims asserted against the Zeccardi Parties. The Plan Administrator made a good faith effort to describe -- in a non-exclusive way -- the nature and amount of the claims he may bring. This was no concealment, intentional or otherwise. In these circumstances, it would be inappropriate and inequitable to apply these estoppel doctrines, which are based in equity, to bar the Plan Administrator's claims against the Moving Defendants. Accordingly, the Zeccardi Parties' Motion to Dismiss on judicial or equitable estoppel grounds is denied.

I. <u>The Moving Defendants Are Properly Joined in This Action, Which Involves a Small Group of Related Parties and Common Factual and Legal Issues</u>

Zeccardi argues generally that, under Fed. R. Bankr. P. 7020 ("Permissive Joinder of Parties"), which fully incorporates Fed. R. Civ. P. 20, the Plan Administrator has misjoined Zeccardi, Concours and Zeccardi LLC with the other Defendants as the claims for relief that the Plan Administrator asserts against them "jointly, severally, or in the alternative" do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and as it does not appear that "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B). The Zeccardi Parties cite *In re Nuclear Imaging Sys., Inc.*, 277 B.R. 59, 64-65 (Bankr. E.D. Pa. 2002). The *Nuclear Imaging* case is readily distinguishable on its facts. There, the plaintiff had sued twenty-four (24) defendants to recover monies paid to them in alleged violation of a cash collateral Order (the majority in amounts under $7,000), and the Bankruptcy Court discerned that the primary target was a single defendant responsible for $3.3 million in transfers to two transferees. Based on Fed. R. Civ. P. 20, the Court understandably dismissed the other twenty-three (23) defendants from the complaint.[128]

---

[128] Zeccardi Br., at 26, Dkt. No. 22-1.

The Plan Administrator responds that, in contrast to *In re Nuclear Imaging*, the Moving Defendants are a discrete, limited group of insiders/owners, distinguished from one another as to their roles but charged with similar misconduct with respect to the Debtor.[129]   In support of his argument, the Plan Administrator cites cases such as *In re Elrod Holdings Corp.*, 385 B.R. 806, 813 (Bankr. D. Del. 2008), which held that common questions of law and fact would arise both in secured creditor's complaint against debtor and subordinate lenders for fraud and in Chapter 7 Trustee's counterclaim (and separate motion for joinder) against the same defendants, so that joinder under Fed. R. Civ. P. 20(a)(2) would be appropriate.   In fact, the Court declared that it would have consolidated Trustee's claims against additional parties under Fed. R. Civ. P. 42(a) even if the parties had not requested it.

Given the limited number of Defendants; their common ownership of Debtor; their yet-to-be determined non-statutory insider status; their collective receipt of more than $18.6 million from Debtor during an apparent period of insolvency; the generally common questions of law and fact involved, as evidenced by (among other things) the substantial overlap of arguments by the Moving Defendants on their Motions to Dismiss, the Moving Defendants are properly joined under Fed. R. Civ. P. 20(a)(2).

J.   The Plan Administrator's Claims Are Not Barred by the *In Pari Delicto* Doctrine

The Moving Defendants argue that Counts 1 (negligent misrepresentation), 2 (breach of fiduciary duty), 3 (common law fraud) and 11 (unjust enrichment) are barred under the *in pari delicto* doctrine.   "The *in pari delicto* doctrine provides that 'a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim.'" *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 735 (D.N.J. 2013) (quoting *In re Scott Acquisition Corp.*, 364 B.R. 562, 566 (Bankr. D. Del. 2007)).   The doctrine is based on the "notion that a wrongdoer should not profit from his

---

[129] Plan Admin. Obj., at 13-16, 53 n.35, Dkt. No. 34.

own misconduct, and courts therefore should refrain from adjudicating a dispute between two wrongdoers." *Id.* In addition, the doctrine is an equitable defense which means, "in a case of equal or mutual fault the position of the defending party is the better one." *Jurista*, 492 B.R. at 736; *In re New Jersey Affordable Homes Corp.*, 2013 WL 6048836, at *24 (Bankr. D.N.J. Nov. 8, 2013); *In re Norvergence, Inc.*, 405 B.R. 709, 740 (Bankr. D.N.J. 2009) ("where a Debtor allegedly has participated in the underlying malfeasance," the plaintiff [a trustee standing in the Debtor's shoes] may not assert a claim against a defendant).

Generally, in analyzing the application of *in pari delicto,* "[a] court will impute fraud by a corporation's officer or agent to the corporation if the fraud is committed 1) in the course of the employment and 2) occurred for the benefit of the corporation." *In re Norvergence,* 405 B.R. at 740. However, under the "adverse interest exception" to the *in pari delicto* defense, imputation is not permitted. *Id.* at 742. "Under the adverse interest exception, fraudulent conduct will not be imputed to a corporation if the unlawful actions by its management were adverse to the corporation and benefited management or a third party." *Id.* Additionally, *in pari delicto* is an affirmative defense. "Generally, an affirmative defense cannot be used to support dismissal of a complaint under Rule 12(b)(6) . . . . Only when the defense's validity is clear from the facts asserted by the plaintiff on the face of the complaint, can it be utilized." *Id.* at 742 (internal citation omitted).

Here, the Plan Administrator has asserted the facts giving rise to this defense on the face of the complaint, namely in describing DeMaio's misconduct. However, the Complaint also alleges sufficient facts to support the Plan Administrator's argument that the adverse interest exception applies, as Defendants' alleged misconduct did not benefit the Debtor, but in fact resulted in significant harm to the Debtor and benefit to the Moving Defendants, as alleged by the Plan Administrator. Many courts have refused to apply the *in pari delicto* doctrine in similar circumstances, at least at the pleading stage. *See, e.g., In re Pitt Penn Holding Co*., 484 B.R. 25,

39 (Bankr. D. Del. 2012) ("*In pari delicto* is not available to defendants who are insiders or

fiduciaries of a corporate wrongdoer, or otherwise exercise control over the corporation."); *In re*

*Oakwood Homes Corp.,* 340 B.R. 510, 536 (Bankr. D. Del. 2006) (declining to apply the *in pari*

*delicto* doctrine where it had not yet been determined whether the defendants were insiders).[130]

Because the adverse inference exception may apply and because it has not yet been

determined whether the Moving Defendants qualify as non-statutory insiders and/or whether they

received improper benefits, all of which will require further factual development, the Motions to

Dismiss on those grounds are denied.  In this regard, the Court notes that, as set forth above, the

Plan Administrator's breach of fiduciary duty, common law fraud and negligent misrepresentation

claims are being dismissed on independent grounds.  Thus, as this stage, this aspect of the Court's

ruling applies only to the Plan Administrator's unjust enrichment claim.

## K.  Entire Controversy Doctrine

Defendant Holtham argues that the Plan Administrator's negligent misrepresentation and

fraud claims are barred under New Jersey's entire controversy doctrine because the facts in support

of the claims are the same as those relied on in the lawsuit brought by TMCC, which has since

settled.  As with the *in pari delicto* argument, the Court notes that these claims are being dismissed

without prejudice on the independent grounds stated above.  However, as set forth below, the entire

controversy doctrine simply does not apply to the Plan Administrator's claims against the Moving

Defendants because the Debtor was not party to that settlement and many of the claims brought by

the Plan Administrator could not have been brought prior to the bankruptcy case (e.g., avoidance

actions under Bankruptcy Code).

---

[130] *See also In re Tropicana Entm't, LLC*, 520 B.R. 455, 469 (Bankr. D. Del. 2014) (finding that *in pari delicto* does
not apply where the complaint alleged that the defendant was an insider of the debtors); *In re Granite Partners, L.P.*,
194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996) ("*In pari delicto* bars claims against third parties, but does not apply to
corporate insiders or partners.").

The entire controversy doctrine requires litigants to "assert all related claims against all parties in one action or be precluded from bringing a second action." *In re Hudsar Inc.*, 199 B.R. 266, 277 (Bankr. D.N.J. 1996). If multiple claims "arise from related facts or the same transaction or series of transactions," the claims must be asserted and resolved in the same action. *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995).

In *Cogdell v. Hospital Center at Orange*, 116 N.J. 7, 15 (1989), the Supreme Court of New Jersey summarized the principle behind the doctrine:

> The entire controversy doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.

The *Cogdell* Court further explained: "[t]he purposes of the doctrine include the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to parties, and the need for complete and final disposition through the avoidance of 'piecemeal decisions.'" *See also DiTrolio*, 142 N.J. at 267.

Here, the goal of reaching a "complete and final disposition" would not be furthered by the entire controversy doctrine as there has been no such final disposition as to the Debtor, who was not party to the settlement between Holtham and TMCC. Further, there was no final disposition of the claims between the Debtor and its members in the District Court Action. Similarly, the avoidance claims under the Bankruptcy Code did not even accrue until after the Debtor filed the petition. Therefore, the Entire Controversy Doctrine simply does not apply to the Plan Administrator's claims against the Moving Defendants. Accordingly, the Motion to Dismiss on this ground is denied.

L. <u>Unjust Enrichment</u>

At Count 11, the Plan Administrator pleads a claim for unjust enrichment as ancillary to the avoidance actions ("Defendants were enriched as a result of receiving the [transfers].").[131] However, as noted by the Moving Defendants, the Plan Administrator already included a claim for recovery of the same transfers in each of his avoidance Counts (Counts 5 through 9). Although unjust enrichment is "a familiar basis for imposition of liability in the law of contracts," its "role . . . in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion." *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004).[132]

To establish a claim for unjust enrichment under New Jersey law, the plaintiff must establish that:

(1)    the defendant received a benefit,
(2)    at the plaintiff's expense,
(3)    under circumstances that would make it unjust for the defendant to retain the benefit without paying for it.

*Jurista*, 492 B.R. at 753-54 (paragraphing added) (internal citations omitted). *See also VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) ("[A] plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."). The plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* at 554.

Holtham and Zeccardi both argue that the Court should dismiss the Plan Administrator's Count 11 for unjust enrichment on the grounds that the theory does not sustain an independent tort claim.[133]  Holtham objects on the additional grounds that the Plan Administrator did not

---

[131] Compl. ¶ 289, Dkt. No. 1.
[132] The Court in *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753-54 (D.N.J. 2013) observed that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action" (internal citations omitted).
[133] Holtham Br., at 23-25, Dkt. No. 14-1; Zeccardi Br., at 34-36, Dkt. No. 22-1.

demonstrate the three elements of the claim under *Jurista*, 492 B.R. at 753-54.[134]  Zeccardi objects

on the additional ground that the confirmed Plan did not expressly preserve unjust enrichment as

a claim; however, as noted above, any reference to avoidance actions and causes of action in the

confirmed Plan was broad and not limited to the specific claims identified in those documents.[135]

Here, the Court also notes that unjust enrichment was specifically listed as a potential claim in

Exhibit A at subsection (iii). Thus, this is another basis to reject the Zeccardi Parties' argument

based on the preclusive effect of the listing of claims in the Disclosure Statement.

At this stage of the proceedings, the Court is not clear as to the underlying nature of the

Plan Administrator's unjust enrichment claims against the Moving Defendants.  These claims

could be quasi-contractual in nature, especially because there were undoubtedly many business

transactions between the Debtor and the Moving Defendants.  However, those transactions were

apparently not sufficiently or accurately documented, as noted above.

Additionally, the Plan Administrator in his objection acknowledges that his claim for unjust

enrichment is one for alternative relief but argues that it will not require additional discovery or

the presentation of additional evidence (from the primary claims) and should be preserved for trial,

citing *In re Am. Remanufacturers, Inc.*, 439 B.R. 633, 637 n.1 (Bankr. D. Del. 2010).  The Court

generally agrees with the Plan Administrator's arguments in this regard and will not dismiss the

unjust enrichment claim at this stage.  Notwithstanding Moving Defendants' arguments to the

contrary, it does appear that the evidence on the unjust enrichment claim will be duplicative of

avoidance claims in many (if not all) respects and will not require additional discovery.  Further,

it is unclear whether the nature of the transactions underlying the Plan Administrator's unjust

enrichment claims sound in tort or contract, or somewhere in between.  The avoidance claims are

---

[134] Holtham Br., at 24-25, Dkt. No. 14-1.
[135] Nov. 24, 2020 Conf. Order, Plan, Art. II.A ¶¶ 5, 16, Ex. A; Causes of Action, Ex. A, Main Dkt. No. 570.  *See also* Part V.H, *supra*.

neither tort nor contract claims, so it is also unclear whether unjust enrichment may be recognized in these circumstances.  Thus, the Court will preserve this issue for another day, if it becomes necessary to reach it.

In sum, dismissal of the unjust enrichment claim at this stage is premature.  It will not give rise to the need for much, if any, additional discovery based on the overlapping nature of that claim and the other claims remaining in this case, and its applicability cannot be determined without further development of the facts and law.

M. <u>The Moving Defendants' Motions to Dismiss Count 4, Which Seeks to Disallow the Moving Defendants' Filed or Scheduled Claims, Is Also Premature</u>

The Moving Defendants seek to dismiss Count 4 of the Plan Administrator's Complaint. This Count seeks, under 11 U.S.C. § 502(d) and (j), to disallow any Proof of Claim that the Moving Defendants filed (or may file) and any debt that the Debtor scheduled as due the Moving Defendants.[136]  The Plan Administrator objects on the grounds that such dismissal is premature.[137] The Court agrees with the Plan Administrator.  Because the Court has preserved nearly all the Plan Administrator's avoidance actions, and because any claims by the Moving Defendants that were or may be filed (or not scheduled) may be disallowed if the Plan Administrator is successful in his avoidance actions against them, the Moving Defendants' Motions to Dismiss Count 4 are premature and will be denied, without prejudice, to abide further proceedings in this case.

## VI.    CONCLUSION

For the foregoing reasons, the Motions to Dismiss are granted in part and denied in part as set forth below:

(i)  The Motions are **GRANTED** with respect to Count 1 (negligent misrepresentation) and Count 3 (common law fraud).  Counts 1 and 3 are **DISMISSED**, without prejudice to the Plan

---

[136] Holtham Br., at 2, 36, Dkt. No. 14-1; Zeccardi Br., at 21, Dkt. No. 22-1; Zeldin Br., at 10, Dkt. No. 23-1.
[137] Plan Admin. Obj., at 50, Dkt. No. 34.

Administrator's right to seek to amend his Complaint within forty-five (45) days of the date of entry of this Order, in default of which the dismissal will be with prejudice; provided, however, that the parties may agree in writing to extend this time period or seek an extension from the Court by letter application made before expiration of the period;

(ii) the Motions are **GRANTED** with respect to Count 2 (breach of fiduciary duty). Count 2 is **DISMISSED**, without prejudice to the Plan Administrator's right to seek to amend his Complaint within forty-five (45) days of the date of entry of this Order, in default of which the dismissal will be with prejudice; provided, however, that the parties may agree in writing to extend this time period or seek an extension from the Court by letter application made before expiration of the period;

(iii) the Motions are **DENIED** with respect to Count 4 (disallowance of the Moving Defendants' proofs of claim and expungement of their scheduled debts);

(iv) the Motions are **DENIED** with respect to Count 5 (actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A)) and Count 6 (actual fraudulent transfer under 11 U.S.C. § 544(b) and N.J.S.A. § 25:2-25(a)(1));

(vi) the Motions are **DENIED** with respect to Count 7 (constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B)) and Count 8 (constructive fraudulent transfer under 11 U.S.C. § 544(b) and N.J.S.A. § 25:2-25(a)(2) and/or 25:2-27);

(vii) the Motions are **DENIED** with respect to Count 9 (insider preference under 11 U.S.C. § 547(b)), except that, to the extent that the Plan Administrator continues to allege that any or all the Moving Defendants are statutory insiders, he must allege the specific statutory sections and facts on which he asserts that status in an Amended Complaint to be filed within forty-five (45) days of the date of entry of this Order, in default of which the statutory insider preference claims will be dismissed with prejudice, subject to the rights of the Plan Administrator to extend that time

period by written agreement of the parties or letter application made before the expiration of the

period; and

      (viii)  the Motions are **DENIED** with respect to Count 11 (unjust enrichment).[138]

An Order consistent with this Opinion is contemporaneously being entered.

Dated:  August 11, 2023

*Vincent F. Papalia*
Vincent F. Papalia
United States Bankruptcy Judge

---

[138] The Plan Administrator did not name the Moving Defendants in Count 10 (postpetition transfers under 11 U.S.C. § 549), which is not addressed above.